IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 18 2007

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| HOME BUILDERS ASSOCIATION OF CENTRAL ARIZONA, | ) ) ) | 2 CA-CV 2006-0188 DEPARTMENT A |
| Plaintiff/Appellee, | ) ) | O P I N I O N |
| v. | ) ) | |
| CITY OF MARICOPA, an Arizona municipality, | ) ) ) | |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV200600071

Honorable Kevin D. White, Judge

AFFIRMED

Gammage & Burnham, P.L.C.
  By Cameron C. Artigue
                                                                    Phoenix
                                        Attorneys for Plaintiff/Appellee

Moyes Storey, Ltd.
  By C. Brad Woodford
                                                                    Phoenix
                                        Attorneys for Defendant/Appellant

H O W A R D, Presiding Judge.

¶1 After a bench trial, the trial court entered judgment in favor of appellee Home Builders Association of Central Arizona (HBACA) and against appellant City of Maricopa in HBACA's declaratory judgment action. On appeal, Maricopa argues the court erred when it found that Maricopa was Pinal County's successor in interest to development agreements entered into by Pinal County and three members of HBACA.[1] Maricopa also argues that Pinal County lacked the statutory authority to enter into the development agreements waiving Maricopa's development fees. Because we conclude the court correctly decided these issues, we affirm.

## BACKGROUND

¶2 We view the facts in the light most favorable to upholding the judgment. *See Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶ 2, 36 P.3d 1208, 1210 (App. 2001). In August 2000 and March 2003, Pinal County entered into three development agreements with three different developers. At the time of these agreements, the County did not impose development fees. All three agreements required that each developer improve Smith-Enke Road, two of the agreements required improvements to Honeycutt Road, two of the agreements required reservation of one or more school/park sites, and one of the

_____

[1]Although HBACA does not have an interest in the contracts and its "rights, status or other legal relations" are not involved as usually required for a declaratory judgment action, *see* A.R.S. § 12-1832, the supreme court has allowed trade associations to bring such actions. *See Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 5-6, 712 P.2d 914, 918-19 (1985); *State v. Direct Sellers Ass'n*, 108 Ariz. 165, 167, 494 P.2d 361, 363 (1972) (trade association had standing to contest statute's constitutionality in declaratory judgment action).

agreements required construction of a wastewater treatment facility and a water distribution facility. All three development agreements contain the following paragraph entitled "Fees":

> Except as specifically provided in this Development Agreement, no surcharge or impact fees[2] or exactions or impositions of any kind whatsoever for water, sewer, utilities, streets or other transportation systems, parks, preserves, storm sewers, flood control, public safety or other public services or any other infrastructure cost or expense shall be chargeable to Developer . . . by the County in any phase of the constructions of the Development Plan.

The agreements also provide that "rights established under th[e] Agreement and Development Plan are not personal rights but attach to and run with the Property. . . . Developer and its successors shall have a vested right to develop the Property in accordance with this Agreement and Development Plan." Finally, the agreements provide that "[t]his Agreement and the Development Plan shall be binding upon County and Developer and their respective successors and assigns."

¶3        On October 15, 2003, Maricopa was incorporated and the incorporation boundary included property subject to the three pre-existing development agreements. On August 3, 2005, Maricopa enacted Ordinance No. 05-10, which adopted by reference "The City of Maricopa Development Fees Code." Under Ordinance No. 05-10, Maricopa had the authority to assess a general government development fee, library development fee, parks

---

2The terms "impact fees" and "development fees" are used interchangeably. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale*, 187 Ariz. 479, 483, 930 P.2d 993, 997 (1997). We use the term "development fees" because that is the term found in the statutes.

and recreation development fee, public safety development fee, and a transportation development fee. Pursuant to this ordinance, Maricopa then sought to assess development fees of approximately $5,000 on each lot in the subdivisions subject to the Pinal County development agreements.

¶4        HBACA, a professional association representing residential builders and associated industries including the developers whose agreements are at issue here, filed a complaint seeking a declaratory judgment requiring Maricopa to acknowledge the validity of the development agreements, to recognize that it is a successor in interest to Pinal County under the agreements, and to stop its actions in violation of the development agreements. Maricopa argued that Pinal County lacked the statutory authority to enter into development agreements that "waive" development fees and that it was not bound by the agreements in any event. After a bench trial, the trial court ruled that Maricopa was Pinal County's successor in interest, that Pinal County had the statutory authority to enter into the agreements, and therefore the agreements were binding on Maricopa. Maricopa now appeals.

## DISCUSSION

¶5        Maricopa first argues the development agreements do not preclude it from imposing development fees because the land subject to the agreements falls under the "exclusive control" of Maricopa and cities and counties are different entities. We agree with Maricopa that Arizona's counties and cities are separate legal entities, whose power is

4

derived from different articles of the Arizona Constitution and from different statutes. *See* Ariz. Const. art. XIII (municipal corporations); art. XII (counties); A.R.S. Title 9 (cities and towns); A.R.S. Title 11 (counties). We also agree that the counties' and cities' authority is limited to those powers expressly, or by necessary implication, delegated to them by the state constitution or statutes. *Ass'd Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949) ("[B]oards of supervisors of the various counties of [Arizona] have only such powers as have been expressly or by necessary implication, delegated to them by the state legislature."); *Home Builders Ass'n of Cent. Ariz. v. City of Apache Junction*, 198 Ariz. 493, ¶ 10, 11 P.3d 1032, 1037 (App. 2000) ("General law cities . . . may exercise only those powers expressly granted them by the legislature, together with those powers that arise by necessary implication out of those that are expressly granted."). But Maricopa did not exist at the time Pinal County entered into the development agreements. Consequently, the issue in this case is not whether Pinal County superseded Maricopa's authority by entering into the development agreements, as Maricopa suggests. Rather the issue is whether Maricopa is Pinal County's successor in interest and is therefore bound by the development agreements Pinal County entered into before Maricopa's incorporation.

¶6            Maricopa next argues the county exceeded its statutory authority when it agreed to the "Fees" provisions of the development agreements because "the power to waive development fees imposed by cities" "cannot be necessarily implied" under A.R.S. § 11-1101. We review the trial court's factual findings for an abuse of discretion, but review its

5

conclusions of law and issues of statutory interpretation de novo. *See Perguson v. Tamis*, 188 Ariz. 425, 427, 937 P.2d 347, 349 (App. 1996); *Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, ¶ 4, 78 P.3d 1081, 1084 (App. 2003). "If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶7         HBACA disputes that any development fees were waived. It notes that, at the time the agreements were entered into, the County had not yet begun to impose development fees on any developer; consequently, there were no fees to waive. We agree with HBACA's analysis but do not find it controlling. If § 11-1101 allowed Pinal County to enter into the development agreements which foreclose imposition of future development fees and bind Maricopa, the terminology used to describe the terms of the agreement is unimportant.

¶8         Section 11-1101(B)(7) states: "The development agreement . . . may specify or otherwise relate to . . . [the c]onditions, terms, restrictions, financing and requirements for public infrastructure and subsequent reimbursements over time." It also allows the development agreement to cover "[a]ny other matters relating to the development of the property." § 11-1101(B)(10).

¶9         The "[c]onditions, terms, restrictions, financing and requirements for public infrastructure" provision of § 11-1101(B)(7) permits development agreements to specify how infrastructure will be provided. This provision includes development fees because development fees are "financing . . . for public infrastructure" assessed to cover future public

6

infrastructure costs. As the supreme court has previously held, "[d]evelopment or impact fees are designed to assist in raising the capital necessary [for public improvements] . . . that surely will arise in the foreseeable future but whose precise details may not at the outset be quite clear." *Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale*, 187 Ariz. 479, 483, 930 P.2d 993, 997 (1997). But the plain wording of this provision is also broad enough to include in-kind contributions to the infrastructure from the developers. Indeed, in counties that do not impose development fees, in-kind contributions are the most likely type of contribution**.**

**¶10** The legislature went further by allowing counties to enter into development agreements that include "[a]ny other matters relating to the development of the property." § 11-1101(B)(10). By enacting subsections 7 and 10, the legislature expressed its intent that the development agreement may cover all matters relating to the development of the property. One of those matters is the imposition of, or preclusion of imposition of, development fees. Based on the plain language of § 11-1101(B), Pinal County has the authority to enter into development agreements that address the developer's obligation to contribute to the public infrastructure. *See Hayes*, 178 Ariz. at 268, 872 P.2d at 672. And because the legislature placed no restrictions on the counties' power to negotiate the "[c]onditions, terms, restrictions, financing and requirements for public infrastructure," § 11-1101(B)(7), and allows development agreements to include "[a]ny other matters relating to the development of the property," § 11-1101(B)(10), Pinal County acted within its statutory

7

authority when it agreed that the developers would develop certain portions of the public infrastructure and would not be assessed development fees not yet adopted and not otherwise addressed in the agreement.

¶11　　　　Nevertheless, Maricopa relies on *Southwest Gas Corp. v. Mohave County*, 188 Ariz. 506, 937 P.2d 696 (App. 1997), to support its argument that the trial court interpreted the statute too broadly because Pinal County's authority must be a necessary implication of § 11-1101.  In *Southwest Gas*, Division One of this court held that a statute allowing the county to regulate a franchisee's use of the public roads by "'impos[ing] restrictions and limitations upon the use of the public roads as it deems best for the public safety or welfare'" did not include the authority to charge a franchise fee.  *Id.* at 508, 937 P.2d at 698, *quoting* A.R.S. § 40-283.  It further held that the right to charge the fee was not necessarily implied in the authority to grant a franchise.  *Id.* at 507, 937 P.2d at 697.  The court stated that "the absence of a prohibition does not mean a county has the power to engage in the questioned conduct. . . .  Instead, the burden is on the county to point out the constitutional or statutory power that permits the conduct."  *Id.* at 509, 937 P.2d at 699.

¶12　　　　But, the legislative language in *Southwest Gas* was specific and did not indicate any legislative intent to provide a general grant of authority over the subject matter. As we noted above, § 11-1101(B) explicitly authorizes the county to enter agreements "relat[ing] to . . . [the c]onditions, terms, restrictions, financing and requirements for public

8

infrastructure and subsequent reimbursements over time . . . [and a]ny other matters relating to the development of the property." This is a more general grant of authority.

¶13    In that respect, this case is closer to *Mahoney v. County of Maricopa*, 49 Ariz. 479, 68 P.2d 694 (1937), cited in *Southwest Gas*, than to *Southwest Gas*. In *Mahoney*, the supreme court found that the statute forming a statewide board repealed by necessary implication older statutes creating other boards because the new statute covered the entire subject matter. *Id*. at 496, 68 P.2d at 701-02. Here, § 11-1101, which permits counties to enter into development agreements covering the entire subject matter of the developer's burden for public infrastructure, is included in chapter 8 entitled "Development Fees." Because the legislature granted the County the right to include or exclude development fees, Maricopa's argument that Pinal County's authority to negotiate development fees is not necessarily implied by § 11-1101 is without merit.

¶14    Maricopa also argues that the trial court erred when it found Maricopa was bound by the development agreements because "Pinal County had no power to prevent development fees imposed by the city . . . against the developers because the Arizona legislature previously stripped all counties of their former authority to waive development fees." It argues that when the legislature repealed A.R.S. § 11-1105 in 2000, authorizing counties to "waive from development fee programs particular types and locations of

9

development that are determined to serve an overriding public interest," it stripped all Arizona counties of the authority to waive development fees.[3]

¶15      First, § 11-1105 applied to those counties that impose development fees and would have had no application here because Pinal County has never imposed development fees. Additionally, § 11-1101(B)(7) and § 11-1101(B)(10) were enacted in 1990. *See* 1990 Ariz. Sess. Laws, ch. 262, § 1. "We presume the legislature is aware of existing statutes when it enacts new statutes." *Washburn v. Pima County*, 206 Ariz. 571, ¶ 11, 81 P.3d 1030, 1035 (App. 2003). The fact that the legislature enacted and then repealed legislation concerning waiver by counties that impose development fees does not affect our interpretation of the statute pertaining to development agreements. Therefore, the legislature's decision to repeal § 11-1105 does not affect our interpretation of § 11-1101.

¶16      Maricopa next argues it is not bound by the development agreements because the trial "court's conclusion that the city . . . [is] a successor in interest to Pinal County is contrary to the constitutional and statutory design governing cities and counties." "We review this issue of statutory construction de novo." *Brake Masters*, 206 Ariz. 360, ¶ 4, 78 P.3d at 1084.

¶17      The legislature has expressly authorized counties to enter into development agreements. § 11-1101(A). It has also provided that "[t]he burdens of th[ose] development

---

[3]Maricopa did not raise this argument below. Although arguments not made below are generally waived, because we are interpreting a statute, we are not bound by that waiver. *Yarbrough v. Montoya-Paez*, 214 Ariz. 1, n.6, 147 P.3d 755, 762 n.6 (App. 2006).

10

agreement[s] are binding on, and the benefits of th[ose] development agreement[s] inure to, the parties to the agreement[s] and to all of their successors in interest and assigns." § 11-1101(E). The use of the plural "their" in the statute means that both the developer and the county can have successors in interest. *See id.*

¶18 "The word 'successor' has been defined as 'one who takes the place that another has left, and sustains the like part or character.'" *Lake Havasu Resort, Inc. v. Commercial Loan Ins. Corp.*, 139 Ariz. 369, 374, 678 P.2d 950, 955 (App. 1983), *quoting H.K.H. Co. v. Am. Mortgage Ins. Co.*, 685 F.2d 315, 318 (9th Cir. 1982). A successor in interest is "'[o]ne who follows another in ownership or control of property. A successor in interest retains the same rights as the original owner, with no change in substance.'" *Miller v. Hehlen*, 209 Ariz. 462, n.7, 104 P.3d 193, 200 n.7 (App. 2005), *quoting Black's Law Dictionary* 1473 (8th ed. 2004) (brackets in *Miller*); *see also A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 172 Ariz. 324, 330-31, 836 P.2d 1034, 1040-41 (App. 1992) (stating that "substantial similarity of ownership and control" between entities insufficient to impose successor liability).

¶19 As HBACA points out, it is "'common' for new development in an unincorporated area to become part of a municipality through annexation or incorporation." Moreover, as Maricopa itself points out, "[p]rior to [its] incorporation, Pinal County was responsible for providing services and government to the residents and landowners, which included planning and zoning. [But u]pon incorporation, the [c]ity . . . became responsible

11

for providing the *same* services and government to its residents." (Emphasis added.) Maricopa also states that once the land subject to the development agreements was incorporated into Maricopa, it was under the "exclusive control" of Maricopa. Accordingly, for the purposes of § 11-1101(A), Maricopa would be a successor in interest to the county.

¶20  We conclude the legislature contemplated that cities would be successors in interest to the county. Therefore, § 11-1101(E) explicitly contemplates and addresses the implications of a subsequent change in the authority governing land use on the pre-existing development agreement by including successors in interest and assigns. We need not look further than the plain language of the statute to conclude the legislature intended the benefits and burdens of development agreements entered into pursuant to it to run with the land. *See Hayes*, 178 Ariz. at 268, 872 P.2d at 672.

¶21  Cases from other jurisdictions support this result. In *Alachua County v. Florida Rock Industries*, 834 So. 2d 370 (Fl. Dist. Ct. App. 2003), Alachua County entered into a development agreement with Florida Rock and the land was subsequently annexed by the City of Newberry. *Id.* at 371. After the annexation, the City of Newberry and Florida Rock "executed a reformed developer's agreement to supplant the agreement between Alachua County and Florida Rock." *Id.* The county then sought enforcement of its development agreement with Florida Rock but the trial court held that the county could not enforce that agreement. *Id.* In affirming, the appellate court stated that "when jurisdiction over property changes as a result of a municipal annexation, the municipality becomes the

12

successor in interest to development agreements the county has entered into." *Id*. at 372; *see also S. Pac. Transp. Co. v. City of Eugene*, 627 F.2d 966, 968 (9th Cir. 1980) (court implicitly recognized city as county's successor in interest); *Baltimore & Ohio R.R. Co. v. Kuchta*, 543 A.2d 371, 375 (Md. Ct. Spec. App. 1988) (county's common law right to insist railroad company maintain road safety passed to city when railroad crossing was annexed).

**¶22**      Maricopa argues that the trial court erred because it "analyzed the [c]ounty [d]evelopment [a]greement statute . . . [and] conclud[ed] that it permitted the prohibition of [d]evelopment [f]ees for [c]ities." But Maricopa incorrectly characterizes the court's ruling. The court analyzed the statute and found that *Pinal County* had the authority to address development fees in its development agreements. It also found that because Maricopa was Pinal County's successor in interest it was precluded from assessing fees not otherwise addressed within those agreements. The court did not, as Maricopa suggests, find as a general rule that under § 11-1101 counties can prohibit cities from assessing development fees under A.R.S. § 9-463.05. *See* A.R.S. § 9-463.05 (authorizing municipalities to assess development fees).

**¶23**      Maricopa next argues that § 9-463.05(B)(3) "already accounts for such a transition from county to city governance by crediting the developers' improvements required under their development agreements with Pinal County, all the while authorizing the city . . . to impose development fees on those developers." Section 9-463.05(B)(3) states that "[t]he municipality shall provide credit toward the payment of a development fee for

13

the required dedication of public sites and improvements provided by the developer for which that development fee is assessed." This section pertains to municipal development fees and when a city must provide credit against its development fees. It does not mention county development agreements concerning subdivisions later annexed into the city and has no effect on what Pinal County was authorized to negotiate under § 11-1101. Additionally, the trial court correctly found that Maricopa was the successor in interest to a binding development agreement that provided no fees would be assessed. Because Maricopa is precluded from assessing development fees on the developments subject to the agreements, § 9-463.05(B)(3) is inapplicable. There are simply no fees for which "dedication of public sites and improvements" can be credited.[4]

¶24          Furthermore, this subsection would apply when the governmental authority requires the dedication of public sites and improvements and also requires payment of development fees. *See* § 9-463.05. The subsection is intended to prevent the governmental authority from imposing a double burden on the developer. It does not indicate a legislative intent to permit a city to charge a development fee notwithstanding the existence of a development agreement that provides to the contrary. *Id.*

---

[4]HBACA further notes (1) some improvements to the infrastructure were made prior to the city's incorporation and because the city's code provides "no offsets shall be allowed unless the City has approved the contribution . . . before it was made," § 9-463 could not apply here; (2) the city could not legally assess an impact fee for pre-existing structures (here Smith-Enke and Honeycutt Roads), so it would not be able to provide a credit for impact fees it cannot legally assess; and (3) "the City does[ not] even hint at any potential credit for the dedication of school sites because municipalities cannot impose impact fees to build schools."

¶25　　　　Maricopa next argues that "exempting from the city['s] . . . development fees those developers who entered development agreements with Pinal County violates the non-discrimination provision of A.R.S. § 9-463.05." Section 9-463.05(B)(5) provides that "[i]f development fees are assessed by a municipality, such fees shall be assessed in a non-discriminatory manner." But in *Home Builders Ass'n of Central Arizona v. City of Scottsdale*, 179 Ariz. 5, 12, 875 P.2d 1310, 1317 (App. 1993), *supp. op.*, 183 Ariz. 243, 902 P.2d 1347 (App. 1995), *approved in part*, 187 Ariz. 479, 930 P.2d 993 (1997), Division One of this court stated that "all development fees 'discriminate' between old and new developments. Development fees, by definition, will place an additional burden upon new developments. This fact alone does not indicate discrimination . . . ." Here, as we stated previously, the developers had entered into development agreements with Pinal County before Maricopa's incorporation and before any "schedule for payment of fees [had] be[en] provided" by Maricopa. § 9-463.05(B)(3). The developers are in a similar position as the old developments discussed in *Home Builders Ass'n of Central Arizona* were: both pre-existed the cities' fee schedule. Thus, we cannot say that by honoring terms of the development agreements, Maricopa is assessing fees in a discriminatory manner.

¶26　　　　Finally, Maricopa argues the trial court's interpretation of § 11-1101 renders A.R.S. § 9-499.10(B)(3) meaningless. But § 9-499.10(B)(3) provides, "[i]f the governing body establishes an infill incentive district, it shall adopt an infill incentive plan to encourage redevelopment in the district. The plan may include . . . [w]aivers of municipal

15

fees for development activities as long as the waivers are not funded by other development fees." Because this section only applies to municipalities that have adopted infill incentives, it has no effect on our interpretation of § 11-1101, providing counties the authority to enter into development agreements.

¶27 Maricopa also argues that pursuant to the development agreements "the development fees are exempted from waiver." The trial court found this issue was beyond the scope of the complaint. Whether a party is bound by an agreement and what that agreement requires of the parties are two separate legal inquiries. Because the second issue is beyond the scope of the complaint and only the first issue was the subject matter of the declaratory judgment action below, we do not address whether the development agreements prohibit Maricopa's development fees.

¶28 Finally, Maricopa argues "the lower court's ruling frustrates the much broader public policy purpose mandated by the Arizona legislature" when it enacted the Growing Smarter Plus legislation. 2000 Ariz. Sess. Laws, 4th Spec. Sess., ch. 1. But the trial court's ruling that Pinal County had the statutory authority to enter into these development agreements does not frustrate Maricopa's ability to "identif[y] policies and strategies that [it] will use to require development to pay its fair share toward the cost of additional public service needs generated by new development." A.R.S. § 9-461.05(D)(4). We recognize the difficulty Maricopa faces in providing services to the residents of these developments, without the receipt of development fees. On the other hand, developers would be loathe to

16

enter into agreements requiring them to provide for part of the public infrastructure knowing that the governing authority could still require a larger contribution toward the public infrastructure in the future or that a successor in interest entity would not be bound by the agreement. The agreement would simply be too uncertain. In the final analysis, the statutes provided counties with the authority to enter into development agreements that are binding on cities who choose to include the land subject to the agreements within their boundaries. Cities are then left a choice as to whether they should do so.

## DISPOSITION

¶29      For the foregoing reasons, we affirm the trial court's judgment in favor of HBACA. Pursuant to A.R.S. § 12-341.01(A), we award HBACA attorney fees on appeal upon its compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
GARYE L. VÁSQUEZ, Judge


17