199 P.3d 629

**HOME BUILDERS ASSOCIATION OF CENTRAL ARIZONA, an Arizona nonprofit corporation, Plaintiff–Appellant,**

v.

**Robert KARD, the Maricopa County Air Quality Control Officer; The Maricopa County Air Quality Department, the Maricopa County Air Pollution Control District; and Maricopa County, a political subdivision of the State of Arizona, Defendants–Appellees.**

No. 1 CA–CV 07–0629.

Court of Appeals of Arizona, Division 1, Department D.

July 8, 2008.

As Amended July 10, 2008.

Review Denied Jan. 6, 2009.

Lewis and Roca LLP, by Richard W. Tobin, II, Albert H. Acken, Phoenix, Attorneys for Appellant.

Gust Rosenfeld, PLC, by Richard A. Segal, Richard B. Hood, Craig A. McCarthy, Phoenix, Attorneys for Appellees.

## OPINION

WEISBERG, Judge.

¶1 Home Builders Association of Central Arizona ("Home Builders" or "the Association") appeals from the superior court's order dismissing its special action complaint for lack of standing. For reasons that follow, we affirm the judgment with respect to Home Builders' claims for damages and injunctive relief but reverse as to its request for declaratory relief.

## BACKGROUND

¶2 Maricopa County Air Quality Control Department ("MCAQCD") and Maricopa County Air Quality Control Officer Robert Kard (collectively "the Defendants") are charged with enforcing air quality regulations. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 49–473 (2005), 49–475 (2005). The regulations at issue require permits for dust-generating operations such as digging and earth-moving. *See* Maricopa County Rule 200 § 305; Maricopa County Rule 280 §§ 310.

¶3 Home Builders is a non-profit Arizona corporation serving the interests of more than nine hundred members in the residential construction and development industry. Its complaint describes the Association's members as "home builders, suppliers and subcontractors, banks, power and communications utilities, title and mortgage insurance companies, real estate developers and other businesses in central Arizona involved in and dependent upon the home building industry." The corporation is not a contractor, subcontractor, or developer and does not claim to directly participate in building construction or development.

¶4 Home Builders' complaint alleged that the Defendants' interpretation and implementation of A.R.S. §§ 49–471.03 (2005), 41–1009(A)(4) (2004), 49–488 (2005) and Maricopa County Rule 100 § 105 would deprive its members of the opportunity to have authorized representatives be present during on-site inspections. The complaint also alleged that MCAQCD failed to provide adequate notice to Home Builders' members of the status of any agency action, to consider MCAQCD's own noncompliance with inspection statutes as grounds for reducing penalties or fines, and to allow permit holders to correct deficiencies before issuing Notices of Violation and Notices to Comply, thereby violating A.R.S. § 49–471.03 (2005). It further alleged that MCAQCD exceeded its authority under A.R.S. § 49–513 by impermissibly considering a company's size when assessing penalties, did not adopt its penalty policy in accordance with the A.R.S. § 49–471 (2005) rulemaking procedures, violated Maricopa County Rule 200 § 305 by issuing new earthmoving permits before the expiration date of prior permits, and violated Maricopa County Rule 280 by seeking duplicative penalties under A.R.S. § 49–513 (2005).

¶5 The complaint asked that the superior court direct the Defendants to comply with these statutes and rules as interpreted in the complaint and to declare the challenged Penalty Policy void. It also asked that the court order the Defendants to refund excess permit fees and civil penalties and to pay attorneys' fees and costs to Home Builders.

¶6 The Defendants moved to dismiss the complaint based upon Home Builders' lack of standing, failure to state a claim, requests for an advisory opinion and an illegal injunction, failure to comply with the notice of claim statute, and improper request for special action relief. After briefing and oral argument, the superior court accepted special action jurisdiction and dismissed the complaint solely for lack of standing. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B), (F)(2)(2003).

## DISCUSSION

### The Association's Standing Re: Damages and Injunctive Relief

■ ¶7 In reviewing a case brought as a special action, we "conduct a bifurcated review. [We] must first determine whether the superior court in its discretion assumed jurisdiction of the merits of the claim. If so, then the determination of the merits may properly be reviewed." *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979). The superior court accepted ju-

risdiction, and thus we may proceed to consider the merits.

¶ 8 According to the Defendants, the superior court properly dismissed the complaint because Home Builders did not demonstrate standing to assert its members' claims in a representational capacity. Standing is a question of law subject to *de novo* review. *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15, 91 P.3d 1019, 1023 (App.2004).

¶ 9 We first observe that the question of standing raises no constitutional concerns here because, unlike the United States Constitution, the Arizona Constitution contains no express case or controversy requirement. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Svcs.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985); see Ariz. Const. art. VI. Instead, standing for our purposes concerns "prudential or judicial restraint" to ensure that we do not issue advisory opinions, address moot cases, or deal with issues that have not been fully developed by true adversaries. *See Armory Park*, 148 Ariz. at 6, 712 P.2d at 919.

¶ 10 This judicial restraint has led Arizona courts to impose a "rigorous" standing requirement. *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140, ¶ 6, 108 P.3d 917, 919 (2005). In general, a party establishes standing by showing a personal, palpable injury. *Bennett v. Napolitano*, 206 Ariz. 520, 524, ¶ 16, 81 P.3d 311, 315 (2003). But when an entity asserts standing in a representative capacity, the court must determine "whether, given all the circumstances in the case, the association has a legitimate interest in an actual controversy involving its members and whether judicial economy and administration will be promoted by allowing representational appearance." *Armory Park*, 148 Ariz. at 6, 712 P.2d at 919. A court also may consider relevant factors identified by the United States Supreme Court, which are whether: (a) the association's "members would have standing to sue in their own right; (b) the interests . . . the association seeks to protect are relevant to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members." *Id.* (*citing Warth v. Seldin*, 422 U.S.

490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

¶ 11 Home Builders' complaint in this case is similar to those in *Warth, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and *Takata*. In all three of those cases, the courts found a lack of standing.

¶ 12 In *Warth*, various organizations and individuals sued a town and town officials, asserting that a zoning ordinance effectively excluded persons of low and moderate income. 422 U.S. at 493, 95 S.Ct. 2197. A local home builders association, which included a number of area residential construction firms, sought to intervene, *id.* at 497, 95 S.Ct. 2197, but the district court dismissed its complaint for lack of standing. *Id.* at 498, 95 S.Ct. 2197.

¶ 13 The United States Supreme Court affirmed. It explained that an organization like the association there might seek relief on its own behalf and assert the rights of its members, provided that such association alleged that "its members, or any one of them, are suffering *immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.*" *Id.* at 511, 95 S.Ct. 2197 (emphasis added). In addition, the Court observed that whether an association had standing "depend[ed] in substantial measure on the nature of the relief sought" and that in most cases in which the Court had found standing, the subject association had sought declaratory or injunctive relief. *Id.* at 515, 95 S.Ct. 2197. It also emphasized that the nature of the claim could not make participation of each injured party indispensable to the proper resolution of the suit. *Id.*

¶ 14 In *Warth*, the association had alleged that the zoning ordinance and the denials of variances "deprived some of its members of 'substantial business opportunities and profits.'" *Id.* at 514–15, 95 S.Ct. 2197. The injury from lost profits, however, was "peculiar to [each] individual member," *id.* at 515, 95 S.Ct. 2197, and thus the alleged damage

was neither "common to the entire membership nor shared by all in equal degree [but] ... the fact and extent of injury would require individualized proof." *Id.* at 515–16, 95 S.Ct. 2197. The Court therefore held that the association lacked standing to claim damages on behalf of its members. *Id.* at 516, 95 S.Ct. 2197.

¶ 15 Here, Home Builders similarly seeks damages based on allegations that the defendants have collected excess permit fees and have improperly imposed civil penalties based upon the size of each sanctioned entity. These claims would require individualized proof, which Home Builders concedes in its reply brief by noting that its members' testimony "may indeed be relevant" and that the case will require "individualized calculations for each affected member." Such mini-adjudications to calculate the various claims would not advance judicial economy, one of the premises for allowing representational standing. We therefore conclude that Home Builders' claims for damages were not appropriately asserted in a representational capacity.

¶ 16 Next, in *Warth,* the Supreme Court found that the association's claim for injunctive and declaratory relief failed for a different reason. *Id.* at 516, 95 S.Ct. 2197. It observed that "[t]he complaint refers to no specific project of any of its members that is currently precluded either by the ordinance or by respondents' action in enforcing it." *Id.* The pleading there did not aver that any member had unsuccessfully applied for a permit or variance for a current project or had utilized any of the remedial mechanisms provided by the ordinance. *Id.* As a result, the association "failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention." *Id.*

¶ 17 Like the *Warth* complaint, Home Builders' complaint does not refer to any particular project or identify any particular member affected by the Defendants' conduct. Further, it does not set forth when any of the alleged events occurred or assert that current projects are being affected by the Defendants' actions. Accordingly, the Association's claims for injunctive and declaratory relief do not identify a present and continuing injury sufficient to support a finding of standing.

¶ 18 *Lujan* also supports our conclusion. There, organizations dedicated to wildlife conservation challenged the interpretation of the Endangered Species Act by the United States Department of the Interior. 504 U.S. at 557–58, 112 S.Ct. 2130. The Supreme Court ruled that to adequately assert standing the complaint must reflect the *"continuing, present adverse effects"* of illegal conduct and a direct effect on one or more members of an organization apart from the organization's special interest in conservation. *Id.* at 563, 112 S.Ct. 2130 (*quoting City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) (emphasis added). Affidavits from organization members that alleged no continuing adverse effects were insufficient because they failed to show actual or imminent harm. *Id.* at 563–64, 112 S.Ct. 2130. The Court also declined to find standing under a " 'vocational nexus approach' under which anyone with a professional interest [in the endangered animals could] sue." *Id.* at 566, 112 S.Ct. 2130. It characterized as "pure speculation and fantasy" the assertion that anyone who observed or worked with an endangered species was appreciably harmed by a project affecting some portion of that species with which the person had no particular connection. *Id.* at 567, 112 S.Ct. 2130.

¶ 19 Similarly, Home Builders cannot rely on a vocational or special interest in homebuilding costs to justify standing. It is simply too speculative to assume that a member of Home Builders is affected by any single project regulated by the Defendants. Furthermore, we note that no member of Home Builders submitted an affidavit explaining what direct effect or injury resulted from the Defendants' activities or why such harm was imminent. The mere "abstract concern with a subject that could be affected by an adjudication" is insufficient. *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

¶ 20 Home Builders' complaint also resembles the one found deficient in *Takata.* The plaintiff there, acting in a purported repre-

sentational capacity for a plaintiff class, sued several automobile manufacturers for having installed defective seatbelt buckles manufactured by the Takata Corporation. 210 Ariz. at 139, ¶ 2, 108 P.3d at 918. Her complaint, however, failed to specify the make and model of her car, *id.* at 139, ¶ 3, 108 P.3d at 918, and did not allege that she had suffered any physical or economic injury fairly traceable to the defendants' conduct. *Id.* at 140, ¶ 7, 108 P.3d at 919. The court therefore found that she failed to satisfy our "rigorous standing requirement." *Id.* at ¶ 6. Moreover, absent "a distinct and palpable injury," she could not sue in a representational capacity in a class action. *Id.* at 141, ¶ 10, 108 P.3d at 920. Permitting her to do so "would severely weaken, if not entirely eliminate, our standing requirement." *Id.*

¶ 21 By analogy, allowing the subject complaint to proceed on a representational basis, without an allegation either of damage to Home Builders or to an identified member or of misconduct on a specific project, would similarly eviscerate our standing requirement.[1] To gain standing, Home Builders must meet these minimal requirements, which it has not.[2]

### The Association's Standing Re: Declaratory Relief

■ ¶ 22 Putting aside for a moment the impact of A.R.S. § 49–497, Home Builders attempts to support its claim for representative standing to seek a declaratory judgment by reasserting the same points that we have concluded were insufficient for its standing requests for damages and injunctive relief. In both *Warth,* 422 U.S. at 515–16, 95 S.Ct. 2197, and *Lujan,* 504 U.S. at 559–64, 112 S.Ct. 2130, the Court considered such requests regarding declaratory relief and, for the reasons previously noted, rejected them. We similarly hold that, but for A.R.S. § 49–497, Home Builders would not possess the

necessary standing to pursue declaratory judgment relief.

¶ 23 This conclusion is not altered by the recent decision of Division Two of this court in *Home Builders Ass'n of Central Arizona v. City of Maricopa,* 215 Ariz. 146, 158 P.3d 869 (App.2007). There, the court concluded that Home Builders as a trade association had no interest in the contracts at issue but allowed it to bring an action for declaratory relief to assert that the City of Maricopa was Pinal County's successor in interest to development agreements entered into by Pinal County and three Association members. *Id.* at 148 n. 1, ¶ 1, 158 P.3d at 871 n. 1. The distinguishing point, of course, is that the court there could identify which three members were affected and which three development agreements were at issue. *Id.* at ¶ 2. Here, however, we do not know either which Association members or which projects were allegedly affected. That opinion, therefore, is not on point here.

¶ 24 Similarly, the Association's reliance upon *State v. Direct Sellers Ass'n,* 108 Ariz. 165, 494 P.2d 361 (1972), is not well taken. There, a trade association sought a declaratory judgment regarding a law regulating door-to-door sales. The plaintiff association included some entities that engaged in door-to-door solicitation, *id.* at 167, 494 P.2d at 363, and it provided evidence that because of the law, no one would buy or discount the notes or contracts created by their door-to-door sales. *Id.* at 169, 494 P.2d at 365. The court ruled that the trade association had standing to challenge the constitutionality of the law, *id.* at 167, 494 P.2d at 363, and ultimately concluded that the law was constitutional. *Id.* at 171, 494 P.2d at 367. Unlike *Direct Sellers,* however, Home Builders has not asserted specific harm to a specific member. Thus, *Direct Sellers* is not inconsistent with our analysis.

¶ 25 Turning to A.R.S. § 49–497 (2005), we conclude that the statute bestows standing

---

1. In light of our resolution, we need not address the Defendants' contention that the Association's complaint would require us to render an advisory opinion.

2. Although Home Builders complains that the dismissal of its complaint was premature, the

record reflects that it never sought leave to amend its complaint in order to address the standing concerns. Having forgone the opportunity to recast its pleading allegations, we will not remand for that purpose at this time.

upon Home Builders to obtain declaratory relief based upon its claim in count five of the complaint regarding defects in the adoption of the County's Air Quality Penalty Policy. Section 49–497 of the Arizona Revised Statutes provides:

> Any person who is or may be affected by a county rule or ordinance pursuant to this article may obtain a judicial declaration of the validity or construction of the rule or ordinance by filing an action for declaratory relief in superior court in accordance with title 12, chapter 10, article 2.[3]

A "[p]erson" is defined as including "any public or private corporation, company, partnership, firm, association or society of persons, the federal government and any of its departments or agencies, the state and any of its agencies, departments or political subdivisions, as well as a natural person." A.R.S. § 49–471(11).

¶ 26 As compared to the *Warth* test, A.R.S. § 49–497 has eliminated the need to show a distinct and palpable injury. Moroever, a ruling on the validity of the Penalty Policy is relevant to Home Builders' purposes, and the adjudication of the rule's validity will not require evidence from individual members. *See Calif. Sportfishing Prot. Alliance v. Diablo Grande, Inc.*, 209 F.Supp.2d 1059, 1068 (E.D.Cal.2002) (plaintiff's claim for declaratory and injunctive relief under Clean Water Act, unlike suit for damages, did not require participation of individual members).

■ ¶ 27 By its broad terms, A.R.S. § 49–497 provides that Home Builders constitutes a "person" who "may be" affected by a county rule and thus is entitled to seek a declaration of a rule's validity. This language does not require a showing of a distinct and palpable injury but rather grants standing if a person "may" be affected. Accordingly, we conclude that A.R.S. § 49–497 authorizes the Association to seek declaratory relief pursuant to the procedures of the declaratory judgment act.[4] *See Warth*, 422 U.S. at 509, 95 S.Ct. 2197 (by statute, Congress may remove impediments to ability of persons to assert rights of third parties).

### Waiver of the Standing Requirement

■ ¶ 28 Home Builders alternatively suggests that we should waive the standing requirement because it has raised important issues concerning clean air and the environment. We will waive such requirement, however, "only in exceptional circumstances, generally in cases involving issues of great public importance that are likely to recur. The paucity of cases in which [courts] have waived the standing requirement demonstrates both [the courts'] reluctance to do so and the narrowness of this exception." *Sears v. Hull*, 192 Ariz. 65, 71, ¶ 25, 961 P.2d 1013, 1019 (1998). In *Sears*, for example, our supreme court declined to address issues regarding a gaming compact that raised no issues of great public importance or statutory interpretation. *Id.* at 72, ¶ 29, 961 P.2d at 1020.

¶ 29 In this case, the challenge to details of administrative law does not raise paramount concerns related to public safety nor does the complaint raise fundamental constitutional questions that might support such a waiver. We therefore decline this suggestion.

---

**3.** The Uniform Declaratory Judgments Act, A.R.S. §§ 12–1831 to–1846.

**4.** We recognize that some tension exists between this statute and A.R.S. § 12–1832(2003) of the Uniform Declaratory Judgments Act, which § 49–497 incorporates by reference. Section 12–1832 permits anyone "whose rights, status or other legal relations are affected by a statute" to have a court determine those rights. Our supreme court nonetheless has held that a justiciable controversy must exist. *Ariz. State Bd. of Dir. For Jr. Colleges v. Phoenix Union High Sch. Dist.*, 102 Ariz. 69, 73, 424 P.2d 819, 823 (1967). Thus, a plaintiff must show facts that are real and cannot rely on facts that may arise in the future. *Land Dep't v. O'Toole*, 154 Ariz. 43, 47,

739 P.2d 1360, 1364 (App.1987). By contrast, § 49–497 allows declaratory relief to persons who may be affected by a county rule. To reconcile the statutes, we assume that the more specific language of § 49–497 controls and that § 12–1832 governs procedural aspects of a claim. A report by the Governmental and Environmental Stewardship Committee clarifies that the bill form of the statute "[a]llows a person to obtain a judicial declaration of the validity of the construction of a rule or ordinance by filing an action for declaratory relief in superior court." Government & Environmental Stewardship Comm., *Legislation Enacted*, 44th Leg., 2d Reg. Sess., at 108.

### Application of Notice of Claim Statute

¶ 30 The Defendants contend that Home Builders' suit is barred because the latter failed to serve a notice of claim prior to filing the complaint pursuant to A.R.S. § 12–821.01 (2003). Whether a statute applies is a question of law for our *de novo* review. *State Comp. Fund v. Superior Ct. (EnerGCorp.Inc.),* 190 Ariz. 371, 374, 948 P.2d 499, 502 (App.1997).

¶ 31 The notice of claim statute applies to a request for damages, rather than to a request for declaratory or injunctive relief. *Martineau v. Maricopa County,* 207 Ariz. 332, 337, ¶ 25, 86 P.3d 912, 917 (App.2004); *State v. Mabery Ranch Co.,* 216 Ariz. 233, 245, ¶ 52, 165 P.3d 211, 223 (App.2007). Because we have determined that Home Builders has standing only to seek declaratory relief under A.R.S. § 49–497, the notice of claim statute is not germane, and we need not further address this argument.

### Propriety of Special Action Jurisdiction in Superior Court

¶ 32 We also reject the Defendants' contention that the superior court should not have accepted special action jurisdiction. Whether to accept jurisdiction is a matter for the superior court's discretion, *State Compensation Fund,* 190 Ariz. at 374, 948 P.2d at 502, and appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists. Ariz. R.P. Spec. Act. 1(a); *see Williams v. Miles,* 212 Ariz. 155, 156, ¶ 9, 128 P.3d 778, 779 (App.2006)(courts should accept jurisdiction only in extraordinary situations).

¶ 33 Here, Home Builders reasonably argues that, other than the special action procedure in the superior court, it has no other means of challenging the Defendants' activities short of the defense of an "expensive enforcement action." Given the specific context of this case, we see no abuse of the superior court's discretion in accepting special action jurisdiction.

### CONCLUSION

¶ 34 For the foregoing reasons, we reverse the superior court's dismissal of count five, the claim for a declaratory judgment regarding the adoption of the Penalty Policy. But we affirm its dismissal of the remaining counts of the complaint.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and JON W. THOMPSON, Judge.

