238 P.3d 626

**Joseph ARPAIO, in his official capacity as Maricopa County Sheriff; and Richard M. Romley, in his official capacity as Maricopa County Attorney, Plaintiffs/Appellants,**

v.

**MARICOPA COUNTY BOARD OF SUPERVISORS and its members; Fulton Brock; Don Stapley; Andrew Kunasek; Max Wilson; and Mary Rose Wilcox, in their official capacities as Maricopa County Supervisors; and the State of Arizona, Defendants/Appellees.**

No. 1 CA–CV 09–0456.

Court of Appeals of Arizona, Division 1, Department A.

Redesignated as Opinion and Publication Ordered Aug. 19, 2010.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by L. Eric Dowell, Leah S. Freed, Kerry S. Martin, Phoenix, Attorneys for Plaintiffs/Appellants.

Polsinelli Shughart PC by Thomas K. Irvine, Phoenix, Attorneys for Defendant/Appellee Maricopa County.

Terry Goddard, Attorney General by William A. Richards, Assistant Attorney General, Mark P. Bookholder, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee State of Arizona.

C. Steven McMurry, Justice of the Peace, Phoenix, Gerald A. Williams, Justice of the Peace, Surprise, Amicus Curiae for Maricopa County Justices of the Peace.

## OPINION

WINTHROP, Judge.

¶ 1 The Maricopa County Sheriff and Maricopa County Attorney[1] ("Appellants") challenge a superior court ruling denying Appellants' motion for summary judgment, granting Appellees' cross-motion for summary judgment, and dismissing Appellants' claims. For the following reasons, we affirm the superior court's ruling.

### FACTS AND PROCEDURAL HISTORY

¶ 2 In June 2008, the Arizona Legislature passed, and Governor Janet Napolitano signed, House Bill 2275 (the "bill"), which included the Health and Welfare Reconciliation Act. 2008 Ariz. Sess. Laws, ch. 288 (2d Reg.Sess.). Section 10 of the bill required each county to transfer a sum of money, based on population size, to the Arizona Health Care Cost Containment System Administration ("AHCCCS"). Senate Bill 1004 later amended the bill to provide for deposit of the transferred monies into the State's general fund.[2] 2009 Ariz. Sess. Laws, ch. 288, § 10 (1st Spec.Sess.). Maricopa County's share of the reconciliation was $24,168,400, and to comply with the bill, the Maricopa County Board of Supervisors ("Board") voted to designate and transfer sums from twenty-six special revenue funds.[3] *Id.*

---

1. Former Maricopa County Attorney Andrew P. Thomas joined Maricopa County Sheriff Joseph Arpaio in initiating this action. Following Thomas's April 6, 2010 resignation, the Maricopa County Board of Supervisors appointed Richard M. Romley as Interim County Attorney. For the purpose of this action, Romley assumes Thomas's role.

2. Section 10, as amended, reads as follows:
   A. Notwithstanding any other law, in fiscal year 2008–2009, counties with a population of two million or more persons shall transfer $24,168,400 and counties with a population of more than eight hundred thousand persons but less than two million persons shall transfer $3,794,400 to the Arizona health care cost containment system administration for deposit in the state general fund.
   B. Notwithstanding any other law, a county may meet any statutory funding requirements of this section from any source of county revenue designated by the county, including funds of any county wide special taxing district in which the board of supervisors serves as the board of directors.
   C. Contributions made pursuant to this section are excluded from the county expenditure limitations.

3. Appellants challenge the transfer of monies from six funds: (1) the Criminal Justice Enhancement Fund, Ariz.Rev.Stat. ("A.R.S.") §§ 41–2401 (Supp.2009), 12–116.01 (Supp.

¶3 On February 27, 2009, Appellants filed suit against the Board, its individual members, and the State of Arizona,[4] seeking injunctive relief and a declaratory judgment, alleging the Board unlawfully seized more than $24 million from special revenue funds established for the use and administration of the County Sheriff, the County Attorney, and other Maricopa County elected officials, agencies, and departments. Appellants filed a motion for summary judgment and the State and County filed cross-motions for summary judgment. In a detailed minute entry ruling dated June 10, 2009, the superior court denied Appellants' motion and granted those filed by the State and County. On June 22, 2009, the County transferred $24,168,400 to the State.

¶4 Appellants timely appealed, and we have jurisdiction pursuant to A.R.S. § 12–2101 (2003).[5]

### ANALYSIS

¶5 The Sheriff argues that the superior court erred when it entered judgment in favor of Appellees. Further, he questions the constitutionality of the bill and the superior court's finding that the legislature implicitly amended the enabling statutes of the designated funds when it passed the bill.

¶6 We apply a *de novo* standard of review to grants of summary judgment and when interpreting statutes and constitutional claims. *State v. Casey*, 205 Ariz. 359, 362, ¶8, 71 P.3d 351, 354 (2003) (constitutionality of statute); *Bentley v. Building Our Future*, 217 Ariz. 265, 270, ¶11, 172 P.3d 860, 865 (App.2007) (grant of summary judgment and statutory interpretation).

### 1. Mootness

¶7 The County argues that the issues the Sheriff now presents are moot because it completed the $24,168,400 transfer to the State in June of 2009. "A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties." *Sedona Private Prop. Owners Ass'n v. City of Sedona*, 192 Ariz. 126, 127, ¶5, 961 P.2d 1074, 1075 (App.1998). Recognizing and declining to rule on moot issues is a "discretionary policy of judicial restraint." *Fisher v. Maricopa County Stadium Dist.*, 185 Ariz. 116, 119, 912 P.2d 1345, 1348 (App.1995).

¶8 The County's argument is premised on the fact that any declaratory relief this court might grant the Sheriff would be without practical effect. The funds at issue are no longer within the County's control; they are irretrievable. The Sheriff had notice that such transfer was going to occur, yet did not seek to stay the effect of the superior court ruling, either in that court or in this court. Additionally, despite such notice, the Sheriff did not seek immediate appellate review by way of special action before the funds were transferred.

¶9 The Sheriff argues, in part, that the case is not moot, and that the appeal raises issues of "public importance" such that we should ignore the mootness doctrine; however, the relative importance of these issues is arguably a matter of conjecture. Through its budget reconciliation, the legislature mandated a one-time transfer of funds to satisfy a designated year's budgetary shortfall. That fiscal year, 2009, has long passed and in light of the economic realities, we have every

2009); (2) the Jail Enhancement Fund, A.R.S. § 41–2401; (3) the Fill the Gap Fund, A.R.S. § 41–2421 (2004); (4) the Anti–Racketeering Revolving Fund, A.R.S. § 13–2314.01 (2010), § 13–2314.03(D) (2010); (5) the Inmate Services Fund, A.R.S. § 31–121 (Supp.2009); and (6) the Inmate Health Services Fund, A.R.S. §§ 31–161 (Supp.2009), –162 (2002).

4. Appellants named the State in their amended complaint, pursuant to A.R.S. § 12–1841 (Supp. 2009). Section 12–1841(A) states, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration[.]" Other than seeking a declaration that the legislative act was unconstitutional, Appellants sought no affirmative relief against the State.

5. Following oral argument in this matter, Mr. Romley moved to dismiss the appeal as it relates to the County Attorney's office. With no objection having been received and good cause appearing, we hereby grant that motion, and dismiss the County Attorney as a party in this matter. Accordingly, we need not address any issue raised concerning the County Attorney's role in this action.

reason to believe the State has already spent these funds.

¶ 10 Additionally, following oral argument in this matter, we directed counsel to file supplemental briefs to address whether the operation of Arizona's notice of claim statute, A.R.S. § 12–821.01 (2003), and the fact that no notices of claim had been filed against either governmental entity, also would render the Sheriff's claims moot.

¶ 11 As it relates to any claim against the State, the Sheriff's amended complaint merely sought declaratory relief. We agree with the Sheriff that one who seeks declaratory relief need not comply with A.R.S. § 12–821.01. *See Home Builder's Ass'n of Cent. Ariz. v. Kard,* 219 Ariz. 374, 381, ¶ 31, 199 P.3d 629, 636 (App.2008). However, even assuming a favorable declaration by this court, to the extent the Sheriff then would seek recovery of some or all of the $24 million from the State, such a claim would indeed constitute the type of claim requiring compliance with the notice of claim statute. Of necessity, the latest date such a claim against the State would have accrued would be the date the County transferred the funds, or June 22, 2009. Accordingly, the deadline for submitting a notice of claim—a necessary predicate to maintaining a damages claim against the State—occurred in December of 2009.

¶ 12 The claims against the County Board of Supervisors and its individual members require a slightly different analysis. The amended complaint, purportedly seeking only declaratory and injunctive relief, does in its formal prayer for relief ask the court to order the Board to "reinstate" the unencumbered status of the subject funds. In the context of the current status of the litigation, however, it is unclear exactly how such relief could be obtained, even assuming a favorable ruling on appeal. Presumably, the Sheriff would contend via further amendment of the complaint or by separate action that these specialty funds would need to be "replenished," with the Board directing the reallocation of other funding within the County's budget. Under these circumstances, it seems logical to treat the Sheriff's contention as the equivalent of a damages claim, seeking recovery of funds he argues were inappropriately taken. Accordingly, such a claim is also subject to the notice of claim statute, and the time for filing that claim has long since passed.

¶ 13 The Sheriff argues, however, that even assuming the notice of claim statute applies, Appellees have waived the protection of the statute by failing to raise the issue in a motion to dismiss the appeal. Consideration of waiver starts with examining Appellees' conduct after the notice of claim deadline has passed. *See Jones v. Cochise County,* 218 Ariz. 372, 379, ¶ 23, 187 P.3d 97, 104 (App.2008) ("Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right" (citation omitted)). Here, such a deadline passed in late December of 2009. The only action taken by Appellees after that date was to appear for an oral argument requested by the Sheriff's counsel and ordered by this court. Under these circumstances, we are reluctant to find that Appellees have waived their right to assert the affirmative bar that § 12–821.01 creates.

¶ 14 At the same time, however, we recognize that application of the mootness doctrine is a discretionary decision. And, while injunctive relief is no longer an issue, declaratory relief can still issue independently of a request or grant of other special relief. *Sandblom v. Corbin,* 125 Ariz. 178, 182, 608 P.2d 317, 321 (App.1980) (citations omitted). While the Sheriff's contentions in this appeal may indeed be moot, we also recognize that a decision on the substantive issues could affect similar future legislative acts; accordingly, we exercise our discretion to address the merits of the Sheriff's appeal.

## 2. Board's Authority to Seize/Transfer Funds

¶ 15 The Sheriff argues the superior court erred in finding the Board had the legal authority to seize and transfer the designated funds to the State. We disagree.

### a. The Designated Funds Were Public Funds

¶ 16 First, despite the Sheriff's argument to the contrary, the court correctly determined the designated statutory funds ("statutory funds") were public funds and not funds held in trust by the County. "Public funds" are funds belonging to the State, subject to the legislature's power to amend their appropriation. *Navajo Tribe v. Arizona Dep't of Admin.*, 111 Ariz. 279, 281, 528 P.2d 623, 625 (1974). In an affidavit, the County's Finance Director, Shelby Scharbach, said the County treated the statutory funds as "Special Revenue Funds" ("SRFs"), defined as funds "restricted or committed to expenditure for specified purposes other than debt service or capital projects."

¶ 17 *Navajo Tribe*, the case the Sheriff cites in support of his trust argument, involved federal funds placed into the State's general fund for the State to administer for a particular purpose, not funds belonging to the State and its political subdivision—the County. *Navajo Tribe*, 111 Ariz. at 280, 528 P.2d at 624. Although the statutory funds in the present case were SRFs whose revenue was from a specific source and whose expenditures were restricted by law, the funds were not held on behalf of a third party and were therefore not trust funds. *See Rios v. Symington*, 172 Ariz. 3, 6–7, 833 P.2d 20, 23–24 (1992). As public monies, the statutory funds were subject to the legislature's power to amend their appropriation, as exercised here through the bill.

### b. No Requirement to Formally Amend Enabling Statutes

¶ 18 The Sheriff next argues that because the enabling statutes of the funds do not specifically allow for transfers such as that required by Section 10, the Board lacked the authority to encumber and transfer the statutory funds. Again, we reject this argument. Because the legislature established the statutory funds, it can redirect the use of those funds without specifically amending the enabling statutes, provided the change is constitutional. *See Rios*, 172 Ariz. at 11, 833 P.2d at 28 ("Logically, the power to appropriate includes the power to amend an appropriation, and we agree that such power is also exclusively a legislative function.").

¶ 19 In the bill, the legislature authorized counties to "meet any statutory funding requirements of [Section 10] from *any source* of county revenue designated by the county." *See* 2008 Ariz. Sess. Laws, ch. 288 (2d Reg. Sess.) (emphasis added). The superior court held, and we agree, that "[i]n passing the law, the legislature altered the use and purpose of these county statutory funds thereby allowing the funds to be used by the County to meet its obligations to the State." Although the legislature originally reserved the statutory funds for the benefit of specific governmental entities, the funds' enabling statutes did not create "an irrevocable dedication of the monies in the funds such that the Board could not designate them as a source to comply with the Bill." [6]

¶ 20 The superior court correctly concluded, "[T]he restrictions in these [enabling] statutes are not restrictions on the uses the State can make of the monies.... The restrictions are only on the uses the County can make of the money when the money is available for use." Accordingly, the legislature did not need to amend the enabling statutes of the statutory funds to amend their appropriation.

¶ 21 Because the Board was acting on a lawful legislative mandate which temporarily revoked limitations on the funds' use, the superior court properly refused to grant injunctive relief. *See* A.R.S. § 12–1802 (2003)

---

**6.** The Sheriff directs us to *Carr v. Frohmiller*, 47 Ariz. 430, 56 P.2d 644 (1936), in support of his argument that, in passing the bill, the legislature unlawfully used the budget process to make substantive changes to existing law. We disagree. *See* Ariz. Const. art. 4, pt. 2, § 20. In *Carr*, the legislature, through a general appropriations bill, limited the expenditure of funds that had previously been "levied and collected" for a specific purpose. *Carr*, 47 Ariz. at 441–42, 56 P.2d at 649. The *Carr* court found "real, serious fundamental objection to the Legislature's levying and collecting taxes for a specific object and purpose and then prohibiting its expenditure for that purpose and letting it revert to the general fund." *Id.* at 442, 56 P.2d at 649. Unlike in *Carr*, the statutory funds at issue in this case were public funds committed to, but not collected for, a specific purpose.

(precluding injunctive relief to prevent "the exercise of a public or private office in a lawful manner" by an office holder).

### 3. Constitutional Claims

■ ¶ 22 The Sheriff also challenges the constitutionality of the bill on the grounds that Article 9, Section 22 of the Arizona Constitution requires any act that imposes a new tax, fee, or assessment providing for a net increase in state revenue be passed by a two-thirds super-majority of both houses of the legislature.

■ ¶ 23 We presume statutes are constitutional and must construe them, if possible, to give them a constitutional meaning. *Jackson v. Tangreen*, 199 Ariz. 306, 309, ¶ 5, 18 P.3d 100, 103 (App.2000) (citation omitted). The party alleging the constitutional violation bears the burden of proof, and "[w]e will declare legislation unconstitutional only if we are clearly convinced that it conflicts with the Arizona or United States Constitution." *Id.* (citations omitted). The Sheriff therefore was required to show that Article 9, Section 22 prohibited the legislature from passing the bill.[7] He has failed to do so.

■ ¶ 24 Again, we agree with the superior court's assessment: "The intent of Article 9, section 22 was to prevent the legislature from enacting without a super-majority vote any statute that increases the overall burden on the tax and fee paying public." Here, the bill does not increase the burden on the tax and fee paying public; rather, it simply requires a transfer of funds already within the government's possession. As discussed *supra*, the statutory funds are public funds—funds belonging to the State. The State, in turn, apportions those funds, in this case to its political subdivision, the County. The funds, however, never lose their charac-

terization as "public" and are thus subject to legislative appropriation or amendment.

¶ 25 This bill does not create new revenue as contemplated by Article 9, Section 22 of the Arizona Constitution, and therefore did not require a super-majority vote of the legislature. The superior court did not err in determining the bill to be constitutional.

### CONCLUSION

¶ 26 For the foregoing reasons, we affirm the superior court's judgment.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and DIANE M. JOHNSEN, Judge.

---

7. Specifically, Article 9, Section 22 states:

    (A) An act that provides for a net increase in state revenues, as described in Subsection B is effective on the affirmative vote of two-thirds of the members of each house of the legislature.

    . . . .

    (B) The requirements of this section apply to any act that provides for a net increase in state revenues in the form of:

1. The imposition of any new tax.
2. An increase in a tax rate or rates.

    . . . .

5. The imposition of any new state fee or assessment.