**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM TERENCE PLATT; MARIA B. PLATT, *Plaintiffs-Appellants*, v. JASON S. MOORE, in his official capacity as Deputy Navajo County Attorney; BRAD CARLYON, in his official capacity as Navajo County Attorney; NAVAJO COUNTY DRUG TASK FORCE, AKA Major Crimes Apprehension Team; COUNTY OF NAVAJO; K. C. CLARK, in his official capacity as Navajo County Sheriff; CITY OF WINSLOW, a municipal corporation; CHRIS VASQUEZ, in his official capacity as Chief of Police for the City of Winslow; CITY OF HOLBROOK, a municipal corporation; MARK JACKSON, in his official capacity as the Chief of Police for the City of Holbrook; TOWN OF SNOWFLAKE, a municipal corporation; TOWN OF TAYLOR, a municipal corporation; LARRY SCARBER, in his official capacity as Chief of Police of Snowflake-Taylor Police Department; CITY OF SHOW LOW, a municipal | No. 19-15610 <br><br> D.C. No. 3:16-cv-08262-BSB |

corporation; JOE SHELLEY, in his
official capacity as Chief of Police for
the City of Show Low; TOWN OF
PINETOP-LAKESIDE, a municipal
corporation; DAVID SARGENT, in his
official capacity as the Chief of Police
for the Town of Pinetop-Lakeside,
                    *Defendants-Appellees*,

and

STATE OF ARIZONA,
          *Intervenor-Defendant-Appellee.*

---

WILLIAM TERENCE PLATT; MARIA B.
PLATT,
                    *Plaintiffs-Appellees*,

v.

JASON S. MOORE, in his official
capacity as Deputy Navajo County
Attorney; BRAD CARLYON, in his
official capacity as Navajo County
Attorney; NAVAJO COUNTY DRUG
TASK FORCE, AKA Major Crimes
Apprehension Team; COUNTY OF
NAVAJO; K. C. CLARK, in his official
capacity as Navajo County Sheriff;
CITY OF WINSLOW, a municipal
corporation; CHRIS VASQUEZ, in his
official capacity as Chief of Police for
the City of Winslow; CITY OF

No. 19-15732

D.C. No.
3:16-cv-08262-
BSB

OPINION

HOLBROOK, a municipal corporation; MARK JACKSON, in his official capacity as the Chief of Police for the City of Holbrook; TOWN OF SNOWFLAKE, a municipal corporation; TOWN OF TAYLOR, a municipal corporation; LARRY SCARBER, in his official capacity as Chief of Police of Snowflake-Taylor Police Department; CITY OF SHOW LOW, a municipal corporation; JOE SHELLEY, in his official capacity as Chief of Police for the City of Show Low; TOWN OF PINETOP-LAKESIDE, a municipal corporation; DAVID SARGENT, in his official capacity as the Chief of Police for the Town of Pinetop-Lakeside,
*Defendants*,

and

STATE OF ARIZONA,
*Intervenor-Defendant-Appellant.*

Appeal from the United States District Court
for the District of Arizona
Bridget S. Bade, Magistrate Judge, Presiding

Argued and Submitted June 5, 2020
Portland, Oregon

Filed October 4, 2021

Before:  A. Wallace Tashima, Marsha S. Berzon, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Collins

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of plaintiffs' state law claims, and remanded, in an action alleging that the seizure of plaintiffs' car pursuant to Arizona's civil forfeiture statutes and the deprivation of its use for five months violated plaintiffs' right to due process under the federal and state constitutions.

Plaintiffs loaned their vehicle to their son who was subsequently arrested during a traffic stop for the presence of marijuana in the vehicle.  Jason Moore, a Deputy Navajo County Attorney and the "asset forfeiture attorney" for Navajo County, directed that the car be seized and impounded.  He then mailed to plaintiffs a notice of pending forfeiture.  The Arizona statutes at the time provided two avenues for contesting forfeiture: filing a claim with the court or filing with the attorney for the state a petition for remission or mitigation of forfeiture within thirty days of notice.  The statute explicitly made these options mutually exclusive; those who choose to file petitions for remission or mitigation could not file a claim against the property with

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the court until after the state's attorney issued a written declaration of forfeiture in response to the petition.

Plaintiffs contested the forfeiture by filing a petition for remission or mitigation. Moore unilaterally determined that the petition was defective, and without notifying plaintiffs of any defect or affording an opportunity to correct it, he proceeded as though the forfeiture was uncontested. When a forfeiture is uncontested, the state need only establish probable cause to believe that the property is subject to forfeiture; it need not prove the factual basis for forfeiture by clear and convincing evidence, as required for contested forfeiture proceedings. Moore represented to the Superior Court in his application for forfeiture that no timely claim or petition for remission had been filed. When plaintiffs learned that Moore had applied for uncontested forfeiture, they filed a claim against the property in Arizona state court and also filed a civil rights action against Moore and various co-defendants. Two weeks later, Moore withdrew his application for forfeiture and the car was returned to the plaintiffs.

Plaintiffs' civil rights action alleged that Arizona's uncontested forfeiture regime denied them due process because it: (1) allows attorneys for the state to adjudicate, without meaningful review, forfeiture proceedings in which the state's attorney, in his official capacity, has a pecuniary interest (the "biased adjudicator" claims); and (2) awards all interests in property forfeited to the agency responsible for seizing it, impairing the ability of law enforcement to administer justice impartially (the "biased enforcer" claims). The district court dismissed both the federal and state law claims, and plaintiffs appealed the dismissal of their state law nominal damages claims only.

The panel first addressed the district court's determination that plaintiffs' claims were barred because they did not file a notice of claim pursuant to Arizona Revised Statute § 12-821.01, which requires, in part, that those asserting claims against a public entity or public employee file a notice of claim before filing suit. The panel noted that, as interpreted by the courts of Arizona, this statute does not apply to claims for declaratory judgment, *Martineau v. Maricopa County*, 86 P.3d 912, 915 (Ariz. Ct. App. 2004), or for injunctive relief, *State v. Mabery Ranch, Co.*, 165 P.3d 211, 222-23 (Ariz. Ct. App. 2007). The panel predicted that, based on the reasoning in *Martineau* and *Mabery*, Arizona would not apply its notice of claim statute to claims for nominal damages, and the panel accordingly reversed the district court's dismissal to the degree it rested on this basis. The panel held that like claims for declaratory or injunctive relief, claims for nominal damages have no direct effect upon a public entity's financial planning or budgeting. And, like claims for declaratory or injunctive relief, it would be nonsensical to require nominal damages claimants for $1 in damages to disclose, as a prerequisite for filing suit, a reasonable estimate of the amount for which the claim may be settled, for such claims are ordinarily not amenable to settlement for a sum certain.

The panel next addressed the district court's alternate bases for dismissal of the claims on appeal. Addressing plaintiffs' biased adjudicator claims, the panel determined that the gravamen of the claim was that the statute improperly permitted Moore full authority to determine whether plaintiffs' petition for remission was validly filed, without notifying them when he determined that it was not. The panel held that on the facts as recited in the complaint, Moore's undisclosed, unreviewable determination that plaintiffs' petition was untimely denied them a meaningful

opportunity to be heard by an unbiased adjudicator. The panel held that the state's regime on its face permitted the state's attorney unilaterally to deny to those who chose to contest forfeiture by filing a petition the procedural protections applicable in contested forfeiture proceedings. The panel held that plaintiffs had standing to bring their biased adjudicator claim because their complaint alleged that they were subject to a constitutionally deficient forfeiture process, which itself constituted an injury.

The panel agreed with the district court that, as to the "biased enforcer" claims, the Navajo County Drug Task Force was not amenable to suit under Arizona law. Dismissal of the claims against the Task Force was therefore proper. The panel held that ordinarily it would consider substituting a proper party in the Task Force's place, but here, the conduct alleged to be unconstitutional was undertaken exclusively by Moore and his supervisor, Brad Carlyon. The panel concluded that both the biased adjudicator and biased enforcer nominal damages claims against Moore and Carlyon for violations of Arizona due process could proceed. On remand, the panel advised the district court to consider anew whether to exercise supplemental jurisdiction over the remaining claims or instead to remand the case to Arizona's courts. Finally, the panel rejected Arizona's invitation on cross-appeal to issue an advisory ruling that its civil forfeiture scheme was facially constitutional.

Concurring in the judgment in part and dissenting in part, Judge Collins stated that he would affirm the district court's judgment in its entirety. As a threshold matter, Judge Collins agreed with the majority's holding that the Navajo County Drug Task Force lacked the capacity to be sued under Arizona law and that the proper defendants for the relevant claims asserted against the Task Force were Moore and

Carlyon, in their official capacities as representatives of the State of Arizona. Judge Collins stated that on this record, plaintiffs lacked Article III standing to assert the so-called "biased-adjudicator" claim. Because Moore's actions neither lengthened the proceedings nor prevented the return of the car, there simply was no sense in which plaintiffs suffered any loss of the car that could be said to be fairly traceable to Moore's decision not to serve a written declaration of forfeiture. As to the biased-enforcer claim, Judge Collins agreed with the district court that Arizona's notice-of-claim statute barred plaintiffs' due process claims for nominal damages. Judge Collins stated that plaintiffs' claims for damages were not exempt from the statute simply because, rather than seeking the full compensatory damages to which they otherwise might have been entitled, they elected to seek only nominal damages.

## COUNSEL

Paul V. Avelar (argued) and Keith E. Diggs, Institute for Justice, Tempe, Arizona, for Plaintiffs-Appellants.

James M. Jellison (argued), Jellison Law Offices PLLC, Carefree, Arizona, for Defendants-Appellees.

Drew C. Ensign (argued), Chief Counsel, Civil Appeals; Thomas Rankin, Chief Counsel, Financial Remedies Section; Brunn (Beau) W. Roysden III, Kenneth Hughes, and Robert J. Makar, Assistant Attorneys General; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Intervenor-Defendant-Appellee.

**OPINION**

BERZON, Circuit Judge:

Police stopped the Platts' car while their son was driving it, found marijuana in the car, and arrested the son. The Platts' car was seized pursuant to Arizona's labyrinthine civil forfeiture statutes. The vehicle was eventually returned to its owners, but only after it had been impounded for five months. Alleging that the seizure of their car and the deprivation of its use for five months violated their rights to due process under the federal and state constitutions, the Platts sued various state and local officials and entities. The district court dismissed all claims.

The Platts now appeal the dismissal of their state claims only. We reverse in part, affirm in part, and remand to the district court for further proceedings. We also reject Arizona's invitation on cross-appeal to issue an advisory ruling that its civil forfeiture scheme is facially constitutional.

I.

The Platts loaned the vehicle at issue here to their son, Shea, in April 2016. The next month, Shea was arrested during a traffic stop after a police dog alerted to the presence of marijuana in the vehicle. Jason Moore, a Deputy Navajo County Attorney and the "asset forfeiture attorney" for Navajo County, directed that the car be seized and impounded. Moore later filed in Navajo County Superior Court, and mailed to the Platts, a "Notice of Pending Forfeiture," in compliance with Arizona Revised Statutes ("A.R.S.") § 13-4307.

After receiving such a notice, persons with an interest in property subject to forfeiture proceedings face a choice between two avenues for protecting their property rights. They may "file either a claim with the court . . . or a petition for remission or mitigation of forfeiture with the attorney for the state" within thirty days of the notice, "but may not file both." *Id.* § 13-4309(2). If a property owner does not pursue either option, then the state's attorney may proceed in court with "uncontested forfeiture." *Id.* § 13-4309. In uncontested forfeiture proceedings, the state need only establish probable cause to believe that the property is subject to forfeiture; it need not prove the factual basis for forfeiture by clear and convincing evidence, as required for contested forfeiture proceedings. *See Id.* § 13-4314(A); *Id.* § 13-4311(D), (M). As Arizona courts have recognized, forfeiture of the property in uncontested forfeiture proceedings is "virtually assur[ed]." *Wohlstom v. Buchanan*, 884 P.2d 687, 689 (Ariz. 1994).

The Platts chose to contest the forfeiture of their car by filing a petition for remission or mitigation. Such petitions require the attorney for the state to conduct an investigation and to issue a written declaration of forfeiture, remission, or mitigation. If the state's attorney chooses to proceed with the forfeiture and issues the required written declaration, the petitioner then has thirty days within which to file a claim with the court to protect her property rights. *See* A.R.S. § 13-4309(3)(a) to (b).

Here, the Platts allege, no written declaration of forfeiture issued. Instead, Moore unilaterally determined that the petition was defective. Without notifying the Platts of any defect or affording an opportunity to correct it, he proceeded as though the forfeiture were uncontested, representing to the Superior Court in his application for

forfeiture that "no timely claim or Petition for Remission has been filed."[1]

When they learned that Moore had applied for uncontested forfeiture, the Platts filed a claim "against the property" in Arizona state court, *Id.* § 13-4311. Although Arizona law bars property owners from intervening in forfeiture proceedings once an application for forfeiture is filed, *see Norriega v. Machado*, 878 P.2d 1386, 1390 (Ariz. Ct. App. 1994), the Platts proposed to construe Moore's purported application for forfeiture as the written declaration of forfeiture that should have been issued in response to their petition, which would have afforded them thirty days within which to file a claim against the property. *See* A.R.S. § 13-4309(3)(c). Moore promptly moved to strike that claim, asserting for the first time that the Platts' petition for remission or mitigation was defective because, although it had been signed, it did not state that it had been "signed under penalty of perjury."

The Platts responded with an opposition to Moore's motion. They also filed in state court this civil rights action against Moore and various co-defendants, challenging Arizona's forfeiture system as violating the constitutions of the United States and of Arizona. In particular, the Platts alleged that Arizona's uncontested forfeiture regime denies them due process of law because it: (1) allows attorneys for the state to adjudicate, without meaningful review, forfeiture proceedings in which the state's attorney, in his official

---

[1] Moore did acknowledge in his application for forfeiture that he had received "correspondence" from the Platts, but asserted that the "correspondence" did not satisfy the statutory requirements to qualify as a petition. He did not identify any flaws in the petition, nor did he submit the "correspondence" for the state court's review.

capacity, has a pecuniary interest (the "biased adjudicator" claims); and (2) awards all interests in property forfeited to the agency responsible for seizing it, "impair[ing] the ability of law enforcement to administer justice impartially" (the "biased enforcer" claims).

Two weeks after this civil rights action was filed, Moore withdrew both his motion to strike and his application for forfeiture, although he maintained that the Platts could not have contested the forfeiture of the car in the pending state forfeiture proceeding had he moved forward. The car was returned to the Platts five months after it was impounded.

Moore and his co-defendants then removed the Platts' civil rights action to federal court, asserting federal question jurisdiction. 28 U.S.C. § 1331. Once the case was removed, the state of Arizona intervened to defend the constitutionality of its forfeiture statutes.

The Platts' case did not fare well in district court. The court dismissed all claims for declaratory and injunctive relief as moot for federal court purposes, a ruling the Platts do not contest. It dismissed all state law claims for failure to comply with Arizona's "notice of claim" statute. *See* A.R.S. § 12-821.01. These rulings were supplemented by merits grounds for dismissing the "biased adjudicator" claims altogether and for dismissing the "biased enforcer" claims against particular defendants. As to the "biased adjudicator" claims, the court adopted an interpretation of Arizona's forfeiture statutes on which Moore's motion to strike would have failed and the Platts could have obtained meaningful review of Moore's decision to reject their petition. As to the "biased enforcer" claims, the court dismissed as a defendant the Navajo County Drug Task Force on the ground that it was not a "jural entity" with the capacity to be sued under Arizona law, nor a "person" under 42 U.S.C. § 1983, and

also dismissed the claims against the individual members of the Task Force.

At that point, the "biased enforcer" federal due process claims for nominal damages against Navajo County Attorney Brad Carlyon and Deputy Navajo County Attorney Moore, in their official capacities, were all that remained of the Platts' case. Those claims soon met their demise as well: the court entered judgment on the pleadings for the defendants under *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), because Carlyon and Moore, sued in their official capacities, are not "person[s]" within the meaning of § 1983.

The Platts appeal the dismissal of their state law nominal damages claims only. They also ask that, regardless of whether those claims are reinstated, the case be remanded to state court so that they can pursue their claims for prospective relief.[2] We review de novo the district court's rulings on Rule 12(b)(6) motions to dismiss, *see Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993), and its rulings interpreting state law, *see Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).

## II.

We begin with the district court's most sweeping basis for dismissal of the claims on appeal: that A.R.S. § 12-821.01 requires those asserting Arizona law claims against a public entity, public school, or public employee to file a

---

[2] Although the parties agree that the claims for prospective relief are moot in federal court, appellants maintain that those claims might nevertheless go forward in the courts of Arizona. *See Ariz. Osteopathic Med. Ass'n v. Fridena*, 463 P.2d 825, 826 (Ariz. 1970).

notice of claim before filing suit, including for claims for nominal damages. The district court held that because the Platts did not file a notice of claim, § 12-821.01 bars their claims.

The parties agree that, if the statute applies, the Platts' Arizona due process claims are barred. The statute provides:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A).

As interpreted by the courts of Arizona, this statute does not apply to claims for declaratory judgment, *Martineau v. Maricopa County*, 86 P.3d 912, 915 (Ariz. Ct. App. 2004), or for injunctive relief, *State v. Mabery Ranch, Co.*, 165 P.3d 211, 222–23 (Ariz. Ct. App. 2007). But it remains an open question whether the statute applies to claims for nominal damages. Our task is to predict, based on the reasoning in

*Martineau* and *Mabery*, how Arizona courts would decide this issue. *See Alliance for Prop. Rights & Fiscal Resp. v. City of Idaho Falls,* 742 F.3d 1100, 1102 (9th Cir. 2013). We predict that Arizona would not apply its notice of claim statute to claims for nominal damages, and we accordingly reverse the dismissal to the degree it rested on this basis.

*Martineau* is particularly instructive. The court there emphasized that the purposes of A.R.S. § 12-821.01 are "to allow the public entity [or employee] to investigate and assess liability, to permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting." *Martineau*, 86 P.3d at 915–16. Recognizing that the claim for declaratory relief there at issue "does not seek damages and would not result in any monetary award against the County . . . (absent possible costs and attorneys' fees)," the court noted that such claims "have no direct effect upon the County's financial planning or budgeting." *Id.* at 916. The court further explained that applying the statute's notice requirement to claims for declaratory judgment would be "inconsistent" with the "statutory language" because the statute requires, as an "essential component," "a reasonable estimate of the amount for which the claim may be settled"; that requirement cannot sensibly be applied to claims for declaratory relief, which are "not amenable . . . to settlement for a sum certain." *Id.* (internal quotation marks and citation omitted).

In reaching this conclusion, *Martineau* relied upon California and federal district court cases, interpreting a similar California notice of claim statute, that support the extension of this reasoning to claims for nominal damages. *See id.* at 916–17. "California courts have recognized an exception to the claim act notice requirements where declaratory or injunctive relief is the *primary* purpose of the

litigation." *Id.* at 916 (citing *Gatto v. County of Sonoma*, 120 Cal. Rptr. 2d 550, 554 n.3, 564 (Ct. App. 2002)) (emphasis added); *see id* at 916 ¶¶ 22–23 & n.6 (characterizing California claims four separate times as not applying when declaratory or injunctive relief is the "primary" purpose of the litigation). Notably for present purposes, *Martineau* cited as persuasive a case that exempted specified incidental damages from the requirements of the notice of claim statute, on the ground that the claim involved damages that were "small and particularly inconsequential in comparison to the effect" of the judgment reflecting that they had prevailed on the liability issues. *Id.* at 916. (citing *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993)). And *Martineau* noted that "[n]one of the recognized purposes of the notice of claims statute are implicated by a suit in which a formal policy of the locality must be declared illegal in order for the plaintiff to prevail." *Id.* (quoting *M.G.M. Const. Co. v. Alameda County*, 615 F. Supp. 149, 151 (N.D. Cal. 1985)).

Given that interpretation of California law, and Arizona's demonstrated willingness in *Martineau* to consider California law in interpreting Arizona's notice of claim statute, it seems likely that Arizona would exempt nominal damages claims from the requirement to file a notice of claim. Nominal damages cases, even more than cases in which *actual* damages are incidental to declaratory relief, are outside the preeminent financial and budgeting purposes of Arizona's presuit claim-filing requirement. Instead, suits for nominal damages are closely similar to suits for declaratory relief with respect to those purposes.

The Supreme Court's recent examination of the history of nominal damages determined that "[t]he award of nominal

damages was one way for plaintiffs at common law to 'obtain a form of declaratory relief in a legal system with no general declaratory judgment act.'" *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021) (quoting D. Laycock & R. Hasen, Modern American Remedies 636 (5th ed. 2019)). As this observation recognizes, before nominal damages can be granted, a court must consider and determine the legal questions underlying the claim for nominal damages, thereby, as in a declaratory judgment action, declaring the applicable law.

Dissenting as to the importance of *Martineau*, Judge Collins argues that the California case law cited by the Arizona courts proves too much, as those cases do not *hold* that Arizona would not require a prelitigation claim for incidental damages where the action is primarily for declaratory or injunctive relief. Dissent at 41–42. But *Martineau* itself dealt with a plaintiff who did make a monetary claim: "Ancillary to Appellants' main action was their contention that they were entitled to counsel of their choice at County expense," 86 P.3d at 913, because the Maricopa County Attorney, who allegedly would ordinarily have represented the plaintiffs, had a conflict of interest. Complaint ¶¶ 19–23, *Martineau v. Maricopa Cnty.*, 2002 WL 32943468 (Ariz. Super. Ct. 2002). *Martineau* noted that some monetary award might still be granted in that case in the form of attorneys' costs or fees, and, again, described the open question in Arizona courts, for which guidance from California courts was useful, as "whether an action *primarily* for declaratory relief is subject to governmental claim notice statutes." 86 P.3d at 916 (emphasis added). So it does appear that under *Martineau*, Arizona would most likely permit a

claim for damages incidental to a claim for declaratory or injunctive relief.[3]

There is scant difference between a claim for declaratory relief and incidental damages and one for nominal damages, except that the nominal damages are more like pure declaratory relief because they are by definition minute and so of no budgetary consequence. The reasoning of the California cases that *Martineau* specifically relied on as "persuasive and consistent with the purposes of Arizona's public entity notice requirements," 86 P.3d at 917, thus at least extends to exempting nominal damages claims of one dollar.

*Mabery* doubled down on *Martineau*'s reasoning. There, the Arizona Court of Appeals extended *Martineau* to claims for injunctive relief. Such claims, the court held, were not subject to the notice of claim requirements because "the drafters intended the statute not to apply to claims that seek only to restrain government conduct," and because "it would be nonsensical for the statute to command such a claimant to state a 'specific amount for which the claim can be settled'" as required by the statute. 165 P.3d at 223 (quoting A.R.S. § 12-821.01(A)).

We conclude that Arizona courts would exempt claims for one dollar in nominal damages for the same reasons claims for declaratory or injunctive relief are exempted.

---

[3] *Arpaio v. Maricopa Cnty. Bd. of Supervisors*, 225 Ariz. 358 (Ct. App. 2010) is not pertinent to our issue. *See* Dissent at 44. *Arpaio* addressed a particular type of declaratory judgment action, in which the plaintiff sought declaratory judgment as to the proper disposition of over $24 million. *Id.* at 361. Such an action is not *primarily* for declaratory relief, and, unlike nominal damages claims for one dollar, has a significant budgetary consequence.

*Martineau* and *Mabery* "articulated principles that guide the construction of [the] relevant statute[]," which we follow in making this determination. *Alliance for Prop. Rights,* 742 F.3d at 1103. Like claims for declaratory or injunctive relief, claims for nominal damages "have no direct effect upon [a public entity's] financial planning or budgeting." *Martineau*, 86 P.3d at 916. The "primary purpose" of claims for nominal damages is not a substantial damages award but a legal liability ruling, rendering any one-dollar award comparatively "inconsequential." *Id.* (citing *Indep. Hous. Servs. of S.F.*, 840 F. Supp. at 1358). And, like claims for declaratory or injunctive relief, it would be nonsensical to require nominal damages claimants for $1 in damages to disclose, as a prerequisite for filing suit, "a reasonable estimate of the amount for which the 'claim' may be settled," for such claims are ordinarily "not amenable . . . to settlement for a sum certain." *Id.*; *see also Mabery*, 165 P.3d at 223.

The dissent also views our conclusion as "undermin[ing] the bright-line rule the statute establishes" between monetary and non-monetary claims. Dissent at 44–45. In support, the dissent references the statement in *Mabery* that "[a]lthough section 12-821.01 does not define 'claim,' we know from its plain language that the drafters intended the statute to apply to claims for money damages." 165 P.3d at 223. But the relevant passage of *Mabery* distinguishes "claims for money damages" from "claims that seek only to restrain government conduct." *Id.* Nominal damages claims of one dollar have consistently been understood as categorically different from even small compensatory damages claims, as "[c]ompensatory damages and nominal damages serve distinct purposes." *Schneider v. County of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002); *see also Carey v. Piphus*, 435 U.S. 247, 267 (1978); *Wiggins v. Rushen*,

760 F.2d 1009, 1012 (9th Cir. 1985). One purpose of a nominal damages claim, as here, is to prospectively restrain government conduct through the "symbolic vindication of [a] constitutional right." *Schneider*, 285 F.3d at 795. The relevant passage of *Mabery* therefore supports our conclusion.

Rather than insisting on an invented bright-line rule, *Martineau*, *Mabery*, and the California cases on which they rely rest on an appreciation of the practical underlying rationales of the notice of claims statute. Interpreting A.R.S. § 12-821.01 as inapplicable to nominal damages claims comports with that approach and with the language and facts of *Martineau*. We confidently predict that the Arizona Supreme Court would hold that where only nominal damages are sought, no claim must be filed under § 12-821.01 before filing suit.

We accordingly reverse the dismissal on this basis of the Platts' Arizona due process claims.[4]

---

[4] Arizona urges, as an alternative basis for affirmance, that Arizona law does not provide a cause of action for damages for alleged violations of the Arizona Constitution. We note that the notice of claim statute purports to authorize claims against Arizona public entities without regard for whether such claims are statutory or constitutional, and that the Arizona decisions upon which we rely permit declaratory and injunctive relief against such entities without any statute explicitly permitting such suits and without regard for whether the claim asserted arises from statutory or constitutional law. *See Martineau*, 86 P.3d at 917; *Mabery*, 165 P.3d at 222–23. In any case, this argument was not raised below, and therefore has been waived. *See Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002).

III.

We turn next to the alternate bases for dismissal of the claims on appeal—first, to the district court's holding that the Platts' "biased adjudicator" claims fail on their merits because Arizona's uncontested forfeiture statutes, properly interpreted, permitted the Platts to file a claim after Moore had filed the application for forfeiture, ensuring that, had the case gone forward, a neutral adjudicator would have reviewed Moore's undisclosed determination that no petition was timely filed. To put it another way: On the district court's interpretation, Moore's motion to strike the Platts' claim against their property would have been denied, and the claim would have been adjudicated under the clear-and-convincing standard which applies in contested proceedings rather than under the probable cause standard which applies in uncontested ones. *See* A.R.S. § 13-4314(A); *id.* § 13-4311(D), (M).

(i) "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). If the district court was correct in its conclusion that Moore's motion to strike was doomed to fail, then the Platts' filing of a claim after the application for forfeiture had been filed indeed secured the opportunity to be heard which due process requires. But if, as the Platts argue, Moore's motion to strike would have succeeded, then Moore's undisclosed determination that no timely petition had been filed was unreviewable, and the forfeiture of their car became "virtually assur[ed]" when Moore unilaterally decided that uncontested forfeiture was appropriate (notwithstanding Moore's subsequent unilateral decision to return the car). *Wohlstrom*, 884 P.2d at 689. Absent guidance to the contrary

from the courts of Arizona, we conclude that the saving construction adopted by the district court cannot be reconciled with the statutory language, and that on the facts as recited in the complaint, Moore's undisclosed, unreviewable determination that the Platts' petition was untimely denied the Platts a meaningful opportunity to be heard by an unbiased adjudicator. *See Matthews*, 424 U.S. at 333; *Ward v. Village of Monroeville*, 409 U.S. 57, 58–61 (1972).

The Arizona statutes as they existed during the events underlying this case purported to furnish property owners with two avenues for contesting a forfeiture: they may file a "claim with the court," or they may file "with the attorney for the state" "a petition for remission or mitigation of forfeiture." A.R.S. § 13-4309(2).[5] The statute explicitly made these options mutually exclusive; property owners "may not file both." *Id.* Those who choose to file petitions "may not" file a claim against the property with the court until *after* the state's attorney issues a written declaration of forfeiture in response to the petition. *Id.* § 13-4309(3)(c).[6] The statute required state's attorneys to issue such written declarations within 90 days after a petition was filed, although the deadline could be extended to 120 days with

---

[5] A.R.S. § 13-4309(2) provided: "An owner of or interest holder in the property may elect to file either a claim with the court within thirty days after the notice or a petition for remission or mitigation of forfeiture with the attorney for the state within thirty days after the notice and not after a complaint has been filed, but may not file both."

[6] A.R.S. § 13-4309(3)(c) provided: "An owner or interest holder in any property declared forfeited may file a claim as described in § 13-4311, subsections E and F in the superior court in the county in which the uncontested forfeiture was declared within thirty days after the mailing of the declaration of forfeiture."

notice to the petitioner specifying the complexities of the case and expected deadline. *See id.* § 13-4309(3)(b).[7]

This regime on its face permitted the state's attorney unilaterally to deny to those who chose to contest forfeiture by filing a petition the procedural protections applicable in contested forfeiture proceedings. The state's attorney needed only to abstain from issuing the required declaration of forfeiture by silently deeming a petition that called for one incorrectly filed, wait out the limitations period for filing a claim in court without notifying the property owner that the petition was inoperative, and then maintain that no petition or claim was timely filed—thereby availing the state of the favorable standards that apply in "uncontested" proceedings. *See Wohlstrom*, 884 P.2d at 689. Exactly that sequence occurred here. So long as no declaration of forfeiture issued, the statute provides no route for a property owner who chose the petition route to trigger judicial review of the state's

---

[7] A.R.S. § 13-4309(3)(b) provided: "The attorney for the state shall provide the seizing agency and the petitioner with a written declaration of forfeiture, remission or mitigation of any or all interest in the property in response to each petition within ninety days after the effective date of the notice of pending forfeiture unless one or more petitioners request an extension of time in writing or unless the circumstances of the case require additional time, in which case the attorney for the state shall notify the petitioner in writing and with specificity within the ninety day period that the circumstances of the case require additional time and further notify the petitioner of the expected decision date. In no event shall the mailing of the declaration be more than one hundred twenty days after the date of the state's notice of pending forfeiture."

Arizona's statutory civil forfeiture scheme has recently been significantly revised, with the amendments effective on September 29, 2021. 2021 Ariz. Sess. Laws ch. 327. These amendments do not affect the Platts' damages claim for the forfeiture to which they were subjected.

attorney's application for uncontested forfeiture. *See Norriega*, 878 P.2d at 1390; A.R.S. § 13-4309(3)(c).

This obvious vulnerability in Arizona's forfeiture regime to a procedural due process challenge cannot be mitigated by interpretative sleight-of-hand. Even if we were to interpret Arizona's command that those who choose to file a petition "may not file" a claim until a declaration of forfeiture has issued as limited to those who file *valid* petitions, *see* A.R.S. § 13-4309(2), it would remain the case that a state's attorney could unilaterally deem a petition invalid without alerting the petitioner. And again, the statute provides only two opportunities to file a claim with the court: within thirty days after a notice of pending forfeiture, as an alternative to filing a petition, or within thirty days of receiving a declaration of forfeiture after filing a petition. To avoid her court claim being time barred by a denial of the petition on timing grounds, an individual who had chosen the petition route would have needed to file a protective claim before receiving any response to the petition, despite the statute's clear command that a petitioner "may not file both" a petition for remission and a claim with the court, *id.* § 13-4309(2), and in defiance of the statute's clear command that a petitioner who does not file a timely petition "may not file" a claim where the petition route was chosen until "after" a declaration of forfeiture has been issued by the state's attorney, *id.* § 13-4309(3)(c).

The Platts allege that they faced precisely such a dilemma. They should not be penalized for taking Arizona's statutory scheme at its word.

(ii) Contrary to the partial dissent on Article III standing, Dissent at 37–39, the Platts have standing to bring their "biased adjudicator" claim. The Platts' complaint alleges that they were subject to a constitutionally deficient

forfeiture process, which itself constitutes an injury. The dissent focuses on the fact that, instead of pursuing an uncontested forfeiture that allowed Moore to adjudicate the validity of the Platts' petition for remission, *Moore* could have instead chosen to initiate judicial proceedings. Dissent at 39.

That Moore could have—but did not—invoke a constitutionally valid process does not remove the Platts' standing to challenge the process to which they were subjected, through no choice of their own. (They did have a choice once notified of the pending uncontested forfeiture before Moore—court claim or petition—but they could not control whether Moore used the uncontested forfeiture route.) Even if the Platts could have received due process under other provisions of the forfeiture statute, "and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process." *Carey*, 435 U.S. at 266.

In *Carey*, the Court held that if the district court determined that the underlying deprivation was *justified*, a due process violation "nevertheless . . . entitled" plaintiffs "to recover nominal damages not to exceed one dollar." *Id*. at 267. *Carey* did not rely on the difference in outcome between constitutional and unconstitutional processes, as the outcome could be identical for a justified deprivation. Similarly, that the Platts car was returned after they were subjected to an allegedly unconstitutional process does not deprive them of standing.

Further, both the Platts' "biased enforcer" and "biased adjudicator" claims involve a loss of their car traceable to the allegedly improper features of the statute. As the dissent cogently explains, "[t]he gravamen of Plaintiffs' biased-enforcer claim is that the groundless forfeiture proceedings

brought against their car might not have been undertaken at all, or would have been abandoned sooner, had these statutory provisions not given such unconstitutional financial incentives to the receiving agencies." Contrary to the dissent's view, the Platts' biased adjudicator claim operates similarly.

The gravamen of the biased adjudicator claim is that the statute improperly permitted Moore full authority to determine whether the Platts' petition for remission was validly filed, without notifying them when he determined that it was not. Absent such authority, the Platts contend, Moore would have had to consider the merits of their petition, subject to review by a court applying a clear-and-convincing standard. Knowing that such review was available, Moore may have abandoned the forfeiture sooner. The statutory deadline for Moore's response to the Platts' petition—had he not deemed it invalid—was September 20, 2016. Moore did not abandon the forfeiture and return the car until October 19, 2016, almost a month later.

The dissent contends that we are bound to conclude otherwise because "the district court specifically held that Moore's choice of response did not lengthen the forfeiture proceedings," and that ruling has not been challenged. Dissent at 39. But the district court's analysis does not relate to the two alternative methods *Moore* (as opposed to the Platts) could have taken on which the dissent relies. As we have explained, the district court's conclusion as to the significance of the *Platts'* choice of procedures rests on an erroneous interpretation of the statute the Platts have challenged.

More specifically, the dissent focuses on Moore's choice to pursue uncontested forfeiture under § 13-4309 as opposed to invoking judicial proceedings under § 13-4311. But the

district court assessed the timing of Moore's decisions *within the uncontested forfeiture process*: namely, whether Moore's choice to deem the Platts' petition for remission invalid and file an order of forfeiture under § 13-4314 delayed the return of their car beyond what would have happened if Moore reviewed the merits of the Platts' petition and instead issued a declaration of forfeiture under § 13-4309(3)(b). Neither the district court nor the parties have offered an analysis of how long judicial proceedings under § 13-4311 would have taken.[8]

But no analysis of the time a judicial process would have taken is required here. As we have explained, Moore's ability to choose a constitutional process does not affect the Platts' standing to challenge the process to which they were actually subjected; if that process was constitutionally deficient, they are entitled to nominal damages. *See Carey*, 435 U.S. at 266.

The district court's assessment that Moore's conduct did not delay the return of the Platts' car likewise does not affect our standing analysis. The district court concluded that the Platts "filed their claim more than a month before the September 20, 2016 deadline that would have applied for Moore to mail a declaration of forfeiture, and before the deadline that would have applied for them to file a claim in response to a declaration of forfeiture." First, the district court's analysis ignores the potential that an unbiased adjudicator would have assessed the merits of the Platts' petition and issued a declaration of remission, not a

---

[8] We note that under § 13-4311, a "hearing on the claim, to the extent practicable and consistent with the interest of justice, shall be held sixty days after all parties have complied with" initial disclosure requirements. *Id.* § 13-4311(K).

declaration of forfeiture, by September 20 (as Moore's ultimate decision to return the car and abandon the forfeiture suggests is likely). Second, this analysis assumes that the Platts secured procedural due process upon the filing of their claim, not upon the return of their car. The filing of the claim could only provide due process if Moore's motion to strike would have failed. As we have explained, that is at best unlikely, and cannot preclude the Platts' standing to challenge the statute.

We accordingly reverse the dismissal of the Platts' (state law) biased adjudicator claims.

IV.

We turn now to the district court's ruling that the Navajo County Drug Task Force is not amenable to suit under Arizona law. We agree with the district court that it is not and affirm dismissal of the claims against the Task Force on this basis.

Arizona permits suits against government entities only where the legislature has conferred upon the entity the capacity to sue or to be sued. *Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). In *Braillard*, the court concluded that a sheriff's office lacked the legal capacity to sue and to be sued because no statute expressly conferred upon it that capacity. *Id.*; *see also Hervey v. Estes*, 65 F.3d 784, 791–92 (9th Cir. 1995). The same is true here. Although Arizona law defines entities such as the Task Force as "seizing agenc[ies]" in forfeiture proceedings, *see* A.R.S. § 13-4301(8), and confers upon such entities the right to be awarded title to the property they seize, *see id.* § 13-4315(B), it does not appear to grant such entities any capacity to sue or to be sued. Dismissal of the claims against the Task Force was therefore proper.

That the Task Force lacks the capacity to be sued under Arizona law does not preclude this Court from substituting a proper party in its place. Fed. R. Civ. P. 21; *see also Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015). Ordinarily, we would consider such a substitution. But as we read the operative complaint, the conduct here alleged to be unconstitutional was undertaken exclusively by Deputy Navajo County Attorney Moore on behalf of Navajo County Attorney Brad Carlyon. It was Moore who directed that the car be seized, Moore who unilaterally deemed the Platts' petition defective, Moore who then initiated uncontested forfeiture proceedings, and Moore who moved to strike the Platts' attempt to intervene. Moore and his supervisor Carlyon accordingly remain the appropriate defendants for the claims as to which we have reversed dismissal.

We note that Moore and Carlyon do not contest on this appeal the district court's ruling that the biased enforcer claims were plausibly alleged on their merits, so we do not here address whether those claims are indeed plausible and so survive dismissal. Having dismissed the Arizona biased enforcer claims for failure to comply with Arizona's notice of claim statute, the district court ultimately held that the federal biased enforcer claims against Moore and Carlyon failed because Moore and Carlyon are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71. But that ruling, not here contested, was a matter of federal statutory interpretation. The defendants point to no parallel ground for dismissal of the Platts' *Arizona* due process claims. Accordingly, given the rulings above, both the biased adjudicator and biased enforcer nominal damages claims against Moore and Carlyon for violations of Arizona due process may proceed.

V.

Given our rulings in the sections above, this action—
once a mix of state and federal claims—now consists of state
due process claims only. 28 U.S.C. § 1367(c)(3) provides
that the exercise of supplemental jurisdiction "may" be
declined if "the district court has dismissed all claims over
which it has original jurisdiction." Accordingly, the district
court on remand should consider anew whether to exercise
supplemental jurisdiction over the remaining claims or
instead to remand the case to Arizona's courts.

Such a remand might be particularly advisable given the
Platts' claims for prospective relief, which they concede are
moot in federal court but which may not be moot in the
courts of Arizona. At the same time, we cannot say that such
a remand is required. *Polo v. Innoventions International,
LLC*, 833 F.3d 1193 (9th Cir. 2016), held that 28 U.S.C.
§ 1447(c), which requires remand of "the case" to state court
"[i]f at any time before final judgment it appears that the
district court lacks subject matter jurisdiction," compelled
remand to state court when the plaintiff lacked standing to
pursue the only claim on appeal in Article III courts, but
could have had standing to pursue those claims in state court.
833 F.3d at 1196, 98 (alteration in original). Section 1447(c)
requires remand of the entire "case" when jurisdiction is
lacking, not of particular claims over which the court lacks
jurisdiction. Because the nominal damages claims revived
by this opinion remain justiciable, § 1447(c) does not apply,
and the district court's decision whether to remand to the
courts of Arizona remains a matter of discretion under
§ 1367(c)(3).

We reject the district court's conclusion that there is now
federal jurisdiction over all the claims based on diversity of
citizenship. *See* 28 U.S.C. § 1332(a). Moore and Carlyon

could be considered Arizona citizens for the purposes of diversity jurisdiction had they been sued in their individual capacities, but they were sued in their official capacities as officers operating on behalf of the state. Contrary to the Platts' submission, they could conceivably be state actors for the purposes of 42 U.S.C. § 1983 and yet citizens for diversity purposes. But here they were not. As the district court determined, as the pertinent statutes specify, and as the complaint alleges, Moore and Carlyon "acted for the state when [they] pursued uncontested forfeiture of Plaintiffs' car under [A.R.S.] § 13-4309." A.R.S. § 11-532(a) (directing that the county attorney shall "conduct, on behalf of the state, all prosecutions for public offenses"); *id.* § 13-4301(1) (defining "[a]ttorney for the state" in the context of the forfeiture statute as "an attorney designated by the attorney general, by a county attorney or by a city attorney to investigate, commence and prosecute an action"). They are therefore effectively "the arm or alter ego of the State" for diversity purposes, and diversity jurisdiction is improper. *Moor v. County of Alameda*, 411 U.S. 693, 717–19 (1973); *see also* 28 U.S.C. § 1332(a).

We note that, "absent waiver by the State or valid congressional override," state sovereign immunity protects state officer defendants sued in federal court in their official capacities from liability in damages, including nominal damages. *Kentucky v. Graham*, 473 U.S. 159, 166–69 (1985). But this immunity may be waived when a defendant unduly delays in asserting it. *See Hill v. Blind Indus. & Servs. of Md*, 179 F.3d 754, 756–58 (9th Cir. 1999) (citing *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991)). As the district court recognized, Moore and Carlyon had ample opportunity to raise the issue earlier in this litigation. We agree with the district court that any sovereign

immunity defense to the nominal damages claims was waived.

## VI.

Finally, we address Arizona's cross-appeal, which seeks a ruling that its statutory scheme governing forfeiture is facially valid under the federal and Arizona constitutions.

Arizona prevailed below. Its purported cross-appeal does not seek to alter the relief ruling by the district court, namely, the denial of all relief to the Platts. Although we would be free to "affirm the district court on any ground supported by the record" and raised in the district court even in the absence of any cross-appeal, *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1187 (9th Cir. 2018); *see Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992), we are not affirming the relevant district court rulings—we are reversing the key rulings.

The ruling that Arizona seeks—that there is *some* "set of circumstances . . . under which the [statute] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987)—would not in any way affect the actual contours of this controversy, which revolves around whether *these* circumstances amount to an as-applied violation of Arizona due process. In effect, Arizona is seeking an advisory opinion as to the validity of its forfeiture scheme in circumstances not now before us. Moreover, the statute as to which Arizona sought that opinion has been substantially revised, *see* note 8, *supra*, so Arizona's request is particularly inapt and in all probability moot, eliminating our jurisdiction to grant it. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017).

In sum, we have no authority to entertain Arizona's request in the guise of determining a cross-appeal. *See, e.g.*, *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc*. 508 U.S. 439, 446 (1993).

For the reasons stated above, we **REVERSE** the dismissal of the Platts' Arizona due process claims for failure to comply with Arizona's notice of claim statute; we **REVERSE** the district court's holding that the biased adjudicator claims fail on their merits; and we **AFFIRM** the district court's dismissal of all defendants from the action save Moore and Carlyon. We remand to the district court for further proceedings consistent with this opinion. The Platts shall recover their costs on appeal.

COLLINS, Circuit Judge, concurring in the judgment in part and dissenting in part:

I disagree with the majority's decision insofar as it allows any portion of this action to proceed any further. Because my reasoning differs somewhat from the majority's even as to the aspects of the judgment as to which we agree, I respectfully concur in the judgment in part and dissent in part.

As this matter is presented to us on appeal, a case that the parties had made unnecessarily complicated below has become greatly simplified. Plaintiffs William Terrence Platt and Maria B. Platt initially filed this suit in state court asserting a variety of federal and state claims against various state and local defendants in connection with then-pending Arizona state-court forfeiture proceedings against an automobile owned by Plaintiffs. After the car was returned and the forfeiture proceedings terminated, Defendants

removed this case to federal court based on federal question jurisdiction, and Arizona formally intervened to defend the constitutionality of its forfeiture statutes.[1]  The district court ultimately dismissed the action with prejudice, and Plaintiffs have raised only a limited number of challenges to the district court's rulings.

As a threshold matter, I agree with the majority's holding that the "Navajo County Drug Task Force" lacks the capacity to be sued under Arizona law and that the proper defendants for the relevant claims asserted against the Task Force are Deputy County Attorney Moore and Navajo County Attorney Brad Carlyon, in their official capacities as representatives of the State of Arizona.[2]  *See* Maj. Opin. at 28–29.  The only remaining issues Plaintiffs have raised on appeal are (1) whether the district court properly dismissed Plaintiffs' claims for nominal damages under *Arizona* law against Moore and Carlyon, in their official capacities, for violation of Plaintiffs' *Arizona* due process rights during the forfeiture proceedings; and (2) whether the district court should have remanded Plaintiffs' concededly moot claims for prospective relief under the Arizona Constitution to the Arizona state courts to see whether those courts would entertain these claims despite their mootness.

---

[1] As the district court noted, the Defendants did not preserve any issue of Eleventh Amendment immunity below.  Nor has any such issue has been presented on appeal.

[2] Plaintiffs contend that other local entities should have been substituted instead, but in making this contention, Plaintiffs fail to address the district court's alternative grounds for not allowing any claims to go forward against those local entities.  Any issue concerning the substitution of those entities for the Task Force is therefore forfeited, in my view.  *See United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007).

I disagree with the majority's resolution of both of these questions.

## I

Before turning to those issues, I must first address the issue of Article III standing.  Although no party has questioned Plaintiffs' standing in this court, we have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Here, Plaintiffs assert two claims for nominal damages based on asserted violations of Arizona's due process clause—namely, (1) a claim that Defendants had an unconstitutional incentive under Arizona law to file and maintain forfeiture proceedings even in the absence of proper grounds to do so (the so-called "biased-enforcer" claim); and (2) a claim that Arizona law allowed Defendants to invoke a particular alternative manner of conducting the forfeiture that did not comply with due process (the so-called "biased-adjudicator" claim).  On this record, Plaintiffs have Article III standing to assert the first claim, but not the second.

## A

As "an indispensable part of the plaintiff's case, each element" of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  I agree that each of

these elements is satisfied as to Plaintiffs' biased-enforcer claim.

Under Arizona's forfeiture scheme, if the forfeited property is a vehicle, it is forfeited to the "seizing agency." ARIZ. REV. STAT. § 13-4315(B)(2).[3] The agency may then sell the vehicle, and the county's anti-racketeering fund receives the net proceeds of the sale. *Id*. § 13-4315(A)(2). The gravamen of Plaintiffs' biased-enforcer claim is that the groundless forfeiture proceedings brought against their car might not have been undertaken at all, or would have been abandoned sooner, had these statutory provisions not given such unconstitutional financial incentives to the receiving agencies (which included Moore's immediate employer, Navajo County, even though he filed the suit as an agent of the State). If this theory has substantive merit, then all three elements of standing would be met: the temporary loss of the car for five months is plainly an injury-in-fact; at least a portion of that period of loss (and possibly the entire five months) would be fairly traceable to the improper statutory incentives to pursue invalid proceedings; and a nominal damage award would redress that injury. Indeed, Plaintiffs would have had Article III standing to pursue *compensatory* damages for the monetarily quantifiable temporary loss of their use of the car during the relevant time period.

---

[3] As the majority notes, Arizona's civil forfeiture scheme was recently overhauled, and the amendments became effective on September 29, 2021. *See* Maj. Opin. at 23 n.7. Nevertheless, Plaintiffs' claim for nominal damages is governed by the Arizona forfeiture statutes as they existed at the time of the forfeiture, and all citations of those statutes in this dissent therefore refer to the applicable prior version.

## B

By contrast, on this record, Plaintiffs lack Article III standing to assert the so-called "biased-adjudicator" claim.

This claim turns on a particular aspect of Arizona forfeiture procedure that Defendant Moore invoked in this case.  Under Arizona's forfeiture statutes, "the attorney for the state may make uncontested civil forfeiture available," by "giving notice within thirty days after seizure . . . to all persons known to have an interest" in the property sought to be forfeited.  ARIZ. REV. STAT. § 13-4309(1).  After receiving notice, a property owner then has two options: he or she may file either (1) "a claim with the court within thirty days after the notice" or (2) "a petition for remission or mitigation of forfeiture with the attorney for the state within thirty days after the notice and not after a complaint has been filed."  *Id*. § 13-4309(2).  If neither option is timely exercised, "the attorney for the state shall apply to the court for an order of forfeiture and allocation of forfeited property."  *Id*. § 13-4314(A).  Here, although Plaintiffs attempted to invoke the second option by sending Moore a purported petition for remission on June 28, 2016, Moore took the position that Plaintiffs' petition did not count because it was not signed under penalty of perjury as required by Arizona Revised Statutes § 13-4309(2) and § 13-4311(E).  Moore therefore filed an application for forfeiture on July 5, which he also mailed to Plaintiffs on July 6, alleging that "no timely claim or Petition for Remission has been filed" and asking that the Navajo County Superior Court immediately forfeit the car under the uncontested forfeiture provisions of the statute.  In response, Plaintiffs filed a claim in Navajo County Superior Court on August 10 and asked for the claim to be adjudicated as a judicial forfeiture proceeding under Arizona Revised

Statutes § 13-4309(6)(a).  Before the court ever ruled on the matter, the State moved to withdraw the forfeiture application on October 19 and returned the car to Plaintiffs. The court filed a notice dismissing the forfeiture claim on November 8, 2016.

The gravamen of Plaintiffs' claim is that this aspect of Arizona's forfeiture scheme effectively gave Moore unreviewable "authority to adjudicate the merits" of Plaintiffs' petition for remission of forfeiture, thereby allowing Moore to make a "unilateral determination" that the petition was deficient and consequently to file an "uncontested" forfeiture proceeding that prejudiced Plaintiffs' rights.  Under this theory, the due process problem would have been avoided had Moore filed a "written declaration of forfeiture" in response to the petition (either because he treated the petition as valid or because he alerted Plaintiffs to their procedural error in time for them to fix it). *See* ARIZ. REV. STAT. § 13-4309(c) (claimant may file claim in court if, in response to petition for remission, the attorney for the State serves a "written declaration of forfeiture"). Thus, Plaintiffs' due-process objection would *not* apply had Moore responded with a declaration of forfeiture rather than an assertion that no valid petition for remission was timely filed.  Moreover, Plaintiffs' theory that the Arizona statutory scheme violates due process rests critically on the assertion that, once Moore filed the uncontested forfeiture, Arizona law *precluded* Plaintiffs from contesting the forfeiture.  But as noted, Plaintiffs here *did* file an objection in court, asking the court to reject the State's position and to proceed with contested judicial forfeiture proceedings, and the State gave up before the court ever ruled.

Given that (1) Plaintiffs did not dispute that probable cause existed for the initial seizure; (2) Plaintiffs' due

process theory would not apply if Moore had served a written declaration of forfeiture; (3) Plaintiffs' due process theory would not apply if the court had proceeded to *agree* to allow their objections; and (4) before the court could rule, the proceedings were terminated in Plaintiffs' favor when the State agreed to return the car, Plaintiffs could *only* have suffered an injury-in-fact that was fairly traceable to Moore's choice of response if that choice somehow differentially *delayed* the return of the car to them.[4] However, the district court specifically held that Moore's choice of response did not lengthen the forfeiture proceedings or prolong the period during which Plaintiffs were deprived of their car and Plaintiffs have not challenged that ruling on appeal. Because Moore's actions neither lengthened the proceedings nor prevented the return of the car, there simply is no sense in which Plaintiffs suffered any loss of the car that can be said to be fairly traceable to Moore's decision not to serve a written declaration of forfeiture.

---

[4] Relying on *Carey v. Piphus*, 435 U.S. 247 (1978), the majority contends that, simply because Moore took the litigating position he did, Plaintiffs thereby had already suffered a *completed* deprivation of property without due process of law at the time that the proceedings were terminated, even if the same delay in the return of the car would have occurred with proper procedures. *See* Maj. Opin. at 25–26. That is wrong. Unless and until the state court *agreed* that Moore's gambit *required* the court to decline to hear Plaintiffs' objections, Plaintiffs had not yet suffered a loss of the opportunity to be heard, and so Plaintiffs had not yet experienced a due process violation on that theory. *Cf. Carey*, 435 U.S. at 248–53 (plaintiff students' suspensions were *actually* effected through defective procedures that violated due process, even if the result might have been substantively correct). Consequently, the only conceivable way in which Moore's actions actually deprived Plaintiffs of a property interest without due process is if it somehow *delayed* the return of the car.

## II

Because Plaintiffs have Article III standing with respect to at least one of their Arizona due process claims for nominal damages against Moore and Carlyon in their capacities as agents for the State, we have jurisdiction to reach the question whether Arizona's notice-of-claim statute, *see* ARIZ. REV. STAT. § 12-821.01, bars that claim. I agree with the district court that the statute does bar Plaintiffs' Arizona due process claims for nominal damages.

The notice-of-claim statute provides the waiver of sovereign immunity that allows the State to be sued for damages under Arizona law. *See Swenson v. County of Pinal*, 402 P.3d 1007, 1010 (Ariz. Ct. App. 2017); *see also Clouse ex rel. Clouse v. State*, 16 P.3d 757, 760 (Ariz. 2001) (statute codified the doctrine of sovereign immunity after Supreme Court of Arizona had abolished the common law version of the doctrine). By its terms, the statute provides that "no action may be maintained" in court on a "claim[] against a public entity, public school or a public employee" unless the claimant first files a formal notice of claim with the relevant entity "within one hundred eighty days after the cause of action accrues." ARIZ. REV. STAT. § 12-821.01(A). The required notice of claim must "contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed" and "a specific amount for which the claim can be settled and the facts supporting that amount." *Id*. Arizona courts have emphasized that the notice-of-claim statute must be strictly followed. *See*, *e.g.*, *Yahweh v. City of Phoenix*, 400 P.3d 445, 447 (Ariz. Ct. App. 2017). Here, Plaintiffs concededly did not comply with the procedures set forth in the notice-of-claim statute, and Plaintiffs have pointed to no other statute authorizing them to sue the State for damages,

including nominal damages. Therefore, if the notice-of-claim statute applies to Plaintiffs' nominal-damages claims, then those claims are barred.

The majority correctly notes that Arizona courts have held that the notice-of-claim statute does not apply to claims for declaratory judgment, *Martineau v. Maricopa Cnty.*, 86 P.3d 912, 915 (Ariz. Ct. App. 2004), or for injunctive relief, *State v. Mabery Ranch, Co.*, 165 P.3d 211, 222–23 (Ariz. Ct. App. 2007). But that point is irrelevant here, because Plaintiffs have not contested the district court's determination that their declaratory and injunctive claims are moot and therefore outside the Article III jurisdiction of the federal courts. *Cf. Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796–97 (2021) (holding that "an award of nominal damages by itself can redress a past injury" and thereby save a case from mootness, even where injunctive claims are concededly moot). The question here is whether Plaintiffs' claims for *damages* are exempt from the statute simply because, rather than seeking the full compensatory damages to which they might otherwise have been entitled, Plaintiffs elected to seek only nominal damages. I agree with the district court that the answer to this question is clearly no.

In reaching a contrary conclusion, the majority relies on the fact that, in holding that declaratory relief claims are not subject to the notice-of-claim statute, the Arizona Court of Appeals in *Martineau* cited certain California-law cases that, according to the majority, in turn suggest that nominal damages claims should also be exempted. *See* Maj. Opin. at 15–16. The majority erroneously reads too much into *Martineau*'s citation of these cases.

The cited cases do not address nominal damages at all, but instead rely on the premise that a suit in which the "primary relief" is declaratory or injunctive is exempt from

the California notice-of-claim statute, even if an ancillary award of modest *compensatory* damages is sought. *Gatto v. County of Sonoma*, 98 Cal. Rptr. 2d 550, 554 n.3, 564 (Cal. Ct. App. 2002); *Independent Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993); *M.G.M. Constr. Co. v. Alameda Cnty.*, 615 F. Supp. 149, 151 (N.D. Cal. 1985). According to the majority's faulty syllogism, *Martineau*'s citation of these cases thereby signified that *Martineau* adopted their reasoning *in toto*— meaning that *ancillary compensatory damages claims* are also exempted, which in turn would mean that *nominal damages claims* are also exempted. But there is no indication in any Arizona case that Arizona has endorsed the rule that ancillary compensatory damages claims are exempt from the notice-of-claim statute. On the contrary, in exempting declaratory relief claims, *Martineau* emphasized that the claim there did "*not seek damages* and would not result in *any monetary award* against the County" other than costs and fees. 86 P.3d at 916 (emphasis added).[5] Indeed,

---

[5] The majority contends that, because the plaintiffs in *Martineau* asserted a claim for state-funded counsel at the outset of the case, the Arizona Court of Appeals' decision in that case must be understood as having adopted the California-law cases' suggestion that ancillary compensatory damages are exempt from the notice-of-claim statute. *See* Maj. Opin. at 17–18. That is incorrect. The "ancillary" claim for attorney's fees in *Martineau* was *not* for fees that had already been incurred *before the suit was filed* and that therefore could properly be the subject of a *pre-suit* notice of claim under Arizona Revised Statutes § 12-821.01. Rather, it was an up-front claim for state-paid counsel for the *ensuing litigation* against the State in court on the underlying claim. *See* Complaint ¶¶ 19–23, *Martineau v. Maricopa Cnty.*, 2002 WL 32943468 (Ariz. Super. Ct. 2002) (seeking "attorneys' fees and costs *related to this matter*" because the Maricopa County Attorney and its approved counsel "cannot represent Plaintiffs *in this action*" (emphasis added)). Because the fee request in *Martineau* was not a pre-suit claim for damages, but rather a claim for fees that would arise from the prosecution of the

after explaining that the California-law cases had relied on a "primary relief" theory that could allow a compensatory award to escape California's notice-of-claim statute, *Martineau* added a cautionary footnote underscoring that "[o]ur holding today should *not* be understood to allow the filing of an action for monetary damages under the guise of seeking declaratory relief without first complying with statutory or administratively mandated procedures." 86 P.3d at 917 n.1 (emphasis added). Far from endorsing the California-law cases' exemption of ancillary compensatory damages claim or their "primary relief" analysis, *Martineau* instead placed dispositive weight on the lack of *any* monetary claim of any size.

The majority is equally wrong in suggesting that *Mabery Ranch* supports the view that Arizona courts would exempt claims for nominal damages from the notice-of-claim statute. *See* Maj. Opin. at 18–19. Rather, just as in *Martineau*, the *Mabery Ranch* court underscored that the statute's language "does not apply to a claim *that seeks no damages* from a governmental entity." 165 P.3d at 223 (emphasis added). *Mabery Ranch* reasoned that "[a]lthough section 12-821.01 does not define 'claim,' we know from its plain language that the drafters intended the statute to apply *to claims for money damages*." *Id*. (emphasis added). This reasoning, of course, explicitly refutes the majority's notion that ancillary or modest monetary claims are exempted; on

_____

lawsuit on the underlying declaratory relief claim, it would make no sense to subject such a claim for suit-incurred fees to a pre-suit presentation requirement aimed at avoiding suits. *Martineau*'s mention of attorneys' fees and costs thus cannot be understood, as the majority would have it, as signifying that the Arizona Court of Appeals was thereby endorsing the exclusion of *pre-litigation* "ancillary" monetary compensatory damages claims from the notice-of-claim statute. *Martineau* said nothing of the sort.

the contrary, a "claim" is covered if it asks for "money damages" *simpliciter*. And *that* reasoning clearly includes nominal damages claims.

Any remaining doubt on this score is dispelled by the decision in *Arpaio v. Maricopa Cnty. Bd. of Supervisors*, 238 P.3d 626 (Ariz. Ct. App. 2010). There the court stated:

> We agree with the [plaintiff] that one who seeks declaratory relief need not comply with A.R.S. § 12-821.01. However, even assuming a favorable declaration by this court, to the extent the [plaintiff] then would seek recovery of some or all of the $24 million from the State, such a claim would indeed constitute the type of claim requiring compliance with the notice of claim statute.

*Id.* at 630 (citation omitted). Such language further confirms that Arizona does *not* follow the California-law cases' theory that *ancillary* monetary relief that might result from a declaration of rights is exempt from a notice-of-claim statute. The Arizona cases agree only with the California-law cases' exemption of declaratory relief claims, and not their partial exemption of compensatory damages claims.

Finally, the majority wrongly relies on its own notions of policy to engraft a new and completely atextual exemption onto the Arizona notice-of-claim statute. According to the majority, because a nominal-damages plaintiff ultimately wants a "legal liability ruling" rather than money, there is no point in requiring such a plaintiff "to state a 'specific amount for which the claim can be settled,'" as the notice-of-claim statute requires. *See* Maj. Opin. at 18 (quoting ARIZ. REV. STAT. § 12-821.01(A)). The majority's faulty reasoning

proves too much and would undermine the bright-line rule the statute establishes. The exact same reasoning would apply to a wide variety of smaller compensatory claims, but it is very hard, in my view, to contend that the language of the notice-of-claim statute exempts "small" or "modest" compensatory damages claims. The only workable bright-line rule, and the one that the statute draws, is a "claim" for *any* amount of damages.[6]

The majority is likewise wrong in suggesting that nominal damages claims are equivalent to requests for declaratory relief, which are not subject to the notice-of-claim statute. The majority cites the U.S. Supreme Court's discussion in *Uzuegbunam* about the historical role of nominal damages claims, but it overlooks an important aspect of what the Court actually said. The Court stated that "nominal damages historically could provide *prospective* relief," thereby serving as "one way for plaintiffs at common law to 'obtain a form of declaratory relief in a legal system with no general declaratory judgment act.'" 141 S. Ct. at 798 (emphasis added) (citation omitted). The Court then went on to reject the defendants' argument that nominal damages claims were limited to this "declaratory function" and that they therefore could not supply *retrospective* relief.

---

[6] Contrary to what the majority suggests, *see* Maj. Opin. at 20, the statute's text makes clear that it draws a bright-line between monetary and non-monetary claims. The statute expressly requires a claimant to include "a specific amount for which the claim can be settled and the facts supporting that amount," ARIZ. REV. STAT. § 12-821.01(A), which confirms that a "claim" within the meaning of the statute means a claim for money from the State. Moreover, the majority overlooks the fact that (as noted earlier) *Mabery Ranch* specifically held that, "[a]lthough section 12–821.01 does not define 'claim,' *we know from its plain language that the drafters intended the statute to apply to claims for money damages*." 165 P.3d at 223 (emphasis added).

*Id*.   Here, Plaintiffs have correctly conceded that their requests for declaratory and injunctive relief are moot, and so the *only* thing keeping this case alive is Plaintiffs' purely retrospective request for *monetary* relief.  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("A live claim for nominal damages will prevent dismissal for mootness." (citation omitted)).   That is, the dispositive feature of Plaintiffs' nominal damages claim is precisely the retrospective monetary aspect that distinguishes it from a declaratory relief claim.[7]  And as *Uzuegbunam* recognized, a claim for nominal damages is in this respect no different from a small claim for *compensatory* damages.  *Id*. at 802. Thus, to the extent that *Uzuegbunam*'s discussion of the nature of nominal damages claims casts any light on how the Arizona courts might characterize them, it confirms that they are distinguishable from declaratory relief claims and are instead no different from retrospective compensatory damages claims that plainly are subject to Arizona's notice-of-claim statute.

Moreover, the majority is wrong in concluding that following the notice requirement would not have made sense in this case.  As I have noted above, Plaintiffs' theory here plainly would have supported a larger *compensatory* damages award, and so it is not clear why that claim should become exempt from the plain language of the statute simply because Plaintiffs decided to cap their damages request at

---

[7] The majority is therefore quite wrong in suggesting that Plaintiffs should be viewed as asserting a "nominal damages claim" that seeks to "*prospectively* restrain government."  *See* Maj. Opin. at 20 (emphasis added).  Any claim for prospective relief in this case is as dead as the proverbial doornail.   The *only* reason why we must still address Plaintiffs' nominal damages claim is precisely because it is retrospective. And that is why it is a damages claim that is subject to the Arizona notice-of-claim statute.

one dollar. Would Plaintiffs' claim still be exempt, according to the majority's reasoning, if Plaintiffs instead had capped their request for damages at $1,000? $500? $50? $10? $2? *Any* of these requests is a "claim" for monetary damages, and they are all equally covered by the plain language of the statute.

More broadly, it would still make sense to apply the notice-of-claim statute here, even if the majority were correct in contending that this suit should be viewed as a declaratory relief action masquerading as a nominal damages claim. By insisting that *all* monetary damages claims must first be presented to the State or be forever barred, the notice-of-claim statute ensures that declaratory relief actions will stand or fall *as declaratory relief actions*. Those actions are exempt from the statute, but they will be subject to dismissal if (as here) they become moot. The majority essentially posits that the Arizona statute aims to *avoid* that consequence and to keep alive—under the guise of $1 nominal damages claims—otherwise moot declaratory relief claims. The majority thus ends up giving nominal damages claims a wholly privileged position that is shared by neither compensatory damages claims nor by declaratory relief claims. Nothing in the language of the Arizona statute supports this peculiar result. And is it particularly absurd in the circumstances of this case, in which the request for $1 in nominal damages is keeping alive a dispute in which any claim for declaratory relief is as moot as could be: not only are the offending features of the statute no longer being applied to Plaintiffs, *they have been repealed entirely*. *See* 2021 Ariz. Legis. Serv. Ch. 327 §§ 15, 17 (H.B. 2810). Although the majority "confidently" predicts that the Arizona Supreme Court will endorse the sheer waste of resources that follows from exempting nominal damages claims from the notice-of-claim statute (without any textual

basis for doing so), *see* Maj. Opin. at 20, that prediction seems quite wrong.

Because Plaintiffs failed to comply with Arizona's notice-of-claim statute, they may not assert any claim for monetary relief. And because their claims for declaratory and injunctive relief, which are exempt from that statute, are concededly moot, no relief can be granted on Plaintiffs' biased-enforcer claim, and that claim necessarily fails.

### III

For the foregoing reasons, the only claim that Plaintiffs are still pursuing, and over which we have Article III jurisdiction, fails on the merits. Plaintiffs nonetheless also contend that, despite our lack of jurisdiction over Plaintiffs' concededly moot declaratory and injunctive relief claims under Arizona law, we should direct the district court to remand those claims to state court to see whether the Arizona courts would be willing to entertain them despite their mootness. I agree that this request should be rejected.

As the majority correctly notes, *see* Maj. Opin. at 30, the fact that the district court had subject matter jurisdiction over, and decided the merits of, *some* claims means that this is not a situation in which the court lacked jurisdiction over the entire case. *Cf.* 28 U.S.C. § 1447(c). Nor have Plaintiffs argued that this is a situation in which the district court, at the moment of removal, lacked subject matter jurisdiction over the declaratory and injunctive claims. *Cf. id.* § 1441(c)(2). Because no statute required remand of the mooted state law claims, I see no basis to fault what Plaintiffs affirmatively concede was the district court's *discretionary* decision to dismiss those claims rather than to remand them to state court. Although the state courts are not bound by the strictures of Article III, I am aware of no

authority—and Plaintiffs have cited none—suggesting that the federal courts are somehow required to exercise their discretion so as to assist plaintiffs in evading the federal courts' constitutionally-based jurisdictional limitations. Moreover, given the recent repeal of the relevant provisions of the civil forfeiture statute, it seems hard to imagine that the Arizona courts would have any interest in beating this dead horse any further.

## IV

Finally, given that I would sustain the judgment in Defendants' favor on the grounds set forth above, I have no occasion to address the State's arguments as to whether that judgment, or any portion of it, could be sustained on the alternative ground that the Arizona statutes that were invoked here do not in fact violate due process principles. And because any further issues raised by the State's cross-appeal improperly seek an advisory opinion, I decline to address any aspect of that cross-appeal.

I therefore would affirm the district court's judgment in its entirety. To the extent that the majority does otherwise, I respectfully dissent.